1
2
3
4
5
6

KEKER, VAN NEST & PETERS LLP
R. JAMES SLAUGHTER - # 192813
rslaughter@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
DAVID ROSEN - # 296139
drosen@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:      415 397 7188

7

Attorneys for Defendant ELECTRONIC ARTS INC.

8

9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11

SAN JOSE DIVISION

12
13

KEVIN RAMIREZ, on his own behalf and on
behalf of all others similarly situated,

Case No. 5:20- cv-05672

14

Plaintiffs,

**DEFENDANT ELECTRONIC ARTS
INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND MEMORANDUM
OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

15

v.

16

ELECTRONIC ARTS INC.,

17

Defendant.

Date:          February 25, 2021
Time:          9:00 a.m.
Dept.:         Courtroom 3 – 5th Floor
Judge:         Hon. Beth Labson Freeman

18

19

Date Filed:  August 13, 2020

20

Trial Date:  Not Yet Assigned

21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

ISSUES TO BE DECIDED ..................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................2

I.      INTRODUCTION .......................................................................................................2

II.     FACTUAL BACKGROUND .......................................................................................2

        A.      Allegations of the Complaint ..........................................................................2

        B.      Plaintiff's Acceptance of EA's User Agreement ............................................3

        C.      The User Agreement and Arbitration Provision .............................................5

III.    ARGUMENT ...............................................................................................................6

        A.      The Federal Arbitration Act Governs the Arbitration Provision .....................6

        B.      EA's User Agreement is Valid and Enforceable .............................................7

        C.      The Parties Clearly and Unmistakably Delegated Arbitrability to the
                Arbitrator.........................................................................................................9

        D.      The Arbitration Provision Plainly Encompasses the Dispute at Issue ..........10

        E.      Plaintiff's Claims Should Be Dismissed.........................................................11

IV.     CONCLUSION...........................................................................................................12

DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:20- cv-05672

1525677

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

**Cases**

4

*Ajamian v. CantorCO2e, L.P.*,
5   203 Cal. App. 4th 771 (2012) ...............................................................................9

6

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ..............................................................................................7
7

8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) .............................................................................................11

9

*Bassett v. Electronic Arts, Inc.*,
10   93 F. Supp. 3d 95 (E.D.N.Y. 2015) .......................................................................9

11

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) .............................................................................10

12

*Cape Flattery Ltd. v. Titan Mar. LLC*,
13   647 F.3d 914 (9th Cir. 2011) ...............................................................................11

14

*Caviani v. Mentor Graphics Corp.*,
   No. 19-CV-01645-EMC, 2019 WL 4470820 (N.D. Cal. Sept. 18, 2019) ...........11
15

16

*Chiron Corp. v. Ortho Diagnostic Sys.*,
   Inc., 207 F. 3d 1126 (9th Cir. 2000) ......................................................................7

17

*Cooper v. Adobe Systems, Inc.*,
18   No. 18-cv-06742-BLF, 2019 WL 5102609 (N.D. Cal. Oct. 11, 2019)............8, 11

19

*Cox v. Ocean View Hotel Corp.*,
20   533 F.3d 1114 (9th Cir. 2008) ...............................................................................7

21

*Crawford v. Beachbody*,
   LLC, No. 14-cv-1583-GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014)...................9

22

*Dean Witter Reynolds, Inc. v. Byrd*,
23   470 U.S. 213 (1985) ..............................................................................................7

24

*Devries v. Experian Info. Sols., Inc.*,
   No. 16-cv-02953-WHO, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ...................9
25

26

*Epic Systems Corp. v. Lewis*,
   138 S. Ct. 1612 (2018)........................................................................................3, 7

27

*First Options of Chicago, Inc. v. Kaplan*,
28   514 U.S. 938 (1995)...............................................................................................8

DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:20- cv-05672

1525677

*Gutierrez v. FriendFinder Networks, Inc.*,
    No. 18-cv-05918-BLF, 2019 WL 1974900 (N.D. Cal. May 3, 2019) .........................................9

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
    139 S. Ct. 524 (2019) ..................................................................................................................8

*Hidalgo v. Tesla Motors, Inc.*,
    No. 5:15-cv-05185-BlF, 2016 WL 3541198 (N.D. Cal. June 29, 2016) ...................................9

*Johnmohammadi v. Bloomingdale's, Inc.*,
    755 F.3d 1072 (9th Cir. 2014) ................................................................................................12

*Johnson v. Oracle Am. Inc.*,
    No. 17-cv-05157-EDL, 2017 WL 8793341 (N.D. Cal. Nov. 17, 2017) ..................................11

*Kairi v. Supershuttle Int'l*,
    No. 08-cv-02993-JSW, 2012 WL 4343220 (N.D. Cal. Sept. 20, 2012) ....................................9

*Lowen v. Lyft, Inc.*,
    129 F. Supp. 3d 945 (N.D. Cal. 2015) ...................................................................................12

*Marmet Health Care Ctr., Inc. v. Brown*,
    565 U.S. 530 (2012) ..................................................................................................................7

*Meridian Project Sys. Inc. v. Hardin Constr. Co.*,
    426 F.Supp.2d 1101 (E.D. Cal. 2006) .....................................................................................9

*Meyer v. Uber Technologies, Inc.*,
    868 F.3d 66 (2d Cir. 2017) .......................................................................................................9

*Miller v. Time Warner Cable Inc.*,
    No. 816-cv-00329, 2016 WL 7471302 (C.D. Cal. Dec. 27, 2016) .........................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ......................................................................................................................7

*Moule v. UPS*,
    No. 1:16-cv-00102-JLT, 2016 WL 3648961 (E.D. Cal. July 7, 2016) .....................................8

*In re Nexus 6P Products Liability Litigation*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) .....................................................................................8

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
    862 F.3d 981 (9th Cir. 2017) ..............................................................................................8, 10

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
    298 F. Supp. 3d 1285 (N.D. Cal. 2018) ...................................................................................7

*Swift v. Zynga Game Network Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) .....................................................................................8

DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:20- cv-05672

1525677

*Taylor v. Shutterfly, Inc.*,
    No. 18-CV-00266-BLF, 2018 WL 4334770 (N.D. Cal. Sept. 11, 2018) ...............................11

*Volt Info. Sciences, Inc. v. Bd. Of Trustees of Leland Stanford Jr. Univ.*,
    489 U.S. 468 (1989).............................................................................................................7

**Statutes**

9 U.S.C. § 1 et seq...................................................................................................................7

9 U.S.C. § 3............................................................................................................................12

1525677

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE ON February 25, 2021, at 9:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 3 - 5th Floor of the United States District Courthouse located at 280 South 1st Street, San Jose, California 95113, Defendant Electronic Arts Inc. ("EA") will and hereby does move the for an order to compel Plaintiff to arbitrate his claims on an individual basis and to dismiss this case.

This motion is based on the following memorandum of points and authorities, the Declarations of Jijnes Patel and Adam Lauridsen and attached exhibits, the arguments of counsel, and all other material which may properly come before the Court at or before the hearing on this motion.

## ISSUES TO BE DECIDED

1.   Whether Plaintiff agreed to be bound by EA's User Agreement, which includes an arbitration provision and class action waiver.

2.   Whether EA's User Agreement is valid and enforceable.

3.   Whether the parties agreed to delegate issues of arbitrability to the arbitrator.

4.   Whether the arbitration provision in EA's User Agreement encompasses Plaintiff's claims.

5.   Whether the Court should dismiss Plaintiff's claims.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Plaintiff Kevin Ramirez ("Plaintiff") brought this putative class action against Defendant Electronic Arts Inc. ("EA") asserting that an alleged "loot box" feature in EA's *FIFA* soccer game, *Madden NFL* football game, and other EA video games are akin to illegal slot machines and violate California gambling law.  As explained in EA's concurrently filed Motion to Dismiss, that is wrong on just about every level.  EA's video games are not gambling "machines or devices" under the California Penal Code, and even if they were, they would be exempt because they are predominately games of skill.

But the Court need not address EA's Motion to Dismiss because this case does not belong in court.  Plaintiff affirmatively agreed to arbitrate his claims against EA on an individual basis, and the Supreme Court requires the arbitration provision to be enforced as written.  *See Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).  EA requires users to assent to its User Agreement, which includes an arbitration provision and class action waiver, before accessing and playing its games.  Indeed, Plaintiff has affirmatively assented to EA's User Agreement *multiple times* while using EA's games and online features, including specifically the games at issue in this case.  The arbitration provision that Plaintiff most recently agreed to applies to "[a]ll disputes, claims or controversies arising out of or relating to this Agreement, any EA Service and its marketing, or the relationship between you and EA . . . includ[ing] claims that accrued before you entered into this Agreement."  Declaration of Jijnes Patel in support of Defendant's Motion to Compel Arbitration ("Patel Decl."), Exh. A.

Accordingly, Plaintiff's claims fall squarely within the scope of the arbitration provision, and the Federal Arbitration Act requires the Court to compel his claims to arbitration on an individual basis.

## II.     FACTUAL BACKGROUND

### A.     Allegations of the Complaint

EA is a global leader in digital interactive entertainment.  Among other things, EA develops and publishes games, content, and online services for gaming consoles, personal

2

DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:20- cv-05672

1525677

computers, and mobile devices.  Patel Decl. ¶ 2.  EA publishes several video game series based on professional sports franchises, including professional football and soccer.  *Id.* ¶ 3.  EA releases new iterations of these games each year.  *Id.*  Plaintiff brought this class action complaint against EA alleging that an online, in-game feature called "Ultimate Team Packs" transforms certain EA video games into illegal "slot machines or devices" under the California Penal Code.  *See* Compl. ¶ 8.  Plaintiff alleges causes of action for (1) violation of California's Unfair Competition Law; (2) violation of the California Consumer Legal Remedies Act; and (3) Unjust Enrichment.  Compl. ¶¶ 112–41.

### B.    Plaintiff's Acceptance of EA's User Agreement

Plaintiff alleges that he has owned and played versions of EA's *FIFA* game series, based on professional international soccer, on his Xbox gaming console since 2011.  Compl. ¶ 16.  He also alleges he has owned and played versions of the *Madden NFL* series, based on professional American football, on his Xbox gaming console since 2013.  *Id.*  Upon installing these games and before he could access the full game,[1] including online game features, Plaintiff would have been required to affirmatively agree to EA's User Agreement, which governs the player's rights and obligations relating to the gaming experience.  Patel Decl. ¶ 5.  The same User Agreement applies to all EA games.  *Id.* ¶ 16.  While the User Agreement is updated periodically, every version of EA's User Agreement since November 2011 has included an arbitration provision and class action waiver.  *Id.* ¶ 16 n.1.

EA's business records reflect that Plaintiff has purchased and installed *FIFA 20*.  *Id.* ¶ 16.  As with any user installing *FIFA 20*, before Plaintiff could proceed to play the full game (including access to the Ultimate Team Packs) after installation, he was first directed to a screen requiring him to click a button affirming that he read and accepted EA's User Agreement and Privacy & Cookie Policy.  *Id.* ¶ 7.  The fact that the User Agreement included an arbitration provision and class action waiver was visible on this screen.  *Id.*  As displayed below, the screen

---

[1] For some games, a user may access and play an offline demonstration of the game before he encounters the screen asking him to consent to EA's User Agreement.  However, a user cannot access any online game features, including Ultimate Team Packs, before agreeing to the User Agreement in the manner described below.  Patel Decl. ¶ 5.

instructed Plaintiff to "[p]lease read the agreement below" and allowed Plaintiff to scroll through

the entire User Agreement and Privacy & Cookie Policy before accepting.  *Id.*

If Plaintiff selected "Do Not Accept," he would have been directed to a pop-up error

window explaining that a user cannot play *FIFA 20* without first accepting EA's User Agreement

and Privacy & Cookie Policy.  *Id.* ¶ 8.  Plaintiff could not have proceeded to play the game

without first affirmatively assenting to EA's User Agreement, including the Agreement's

arbitration provision.  *Id.*

EA's business records also reflect that Plaintiff purchased and installed *Madden NFL 20*,

for which he was required to affirmatively assent to EA's User Agreement through a virtually

identical process as that described above.  *Id.*  ¶¶ 10–13.  Indeed, EA's business records show that

Plaintiff has purchased and installed *more than twenty* EA games.  *Id.* ¶ 15.  Upon installing any

of these games and before he could access and play the full game, including online features,

Plaintiff would have been required to affirmatively agree to EA's User Agreement.  *Id.*

### C.     The User Agreement and Arbitration Provision

Current and past versions of EA's User Agreement are posted online at www.ea.com and may be accessed by anyone at any time.  *Id.* ¶ 16.  No account or purchase is necessary to access the User Agreement.  *Id.*  The version of the User Agreement that Plaintiff accepted when he installed *FIFA 20* and *Madden NFL 20* applies broadly to all EA online services:

> This Agreement governs [users'] access and use of software products, such as game software contained on disc or downloaded, offered by EA and its subsidiaries ("EA") and related updates, upgrades and features as well as online and mobile services, features, content and websites offered by EA and/or live events hosted by or in connection with EA (collectively "EA Services")

*Id.*, Exh. A.

The User Agreement contains an arbitration provision that precludes class or other representative claims.  It states in bold, capitalized font:

> BY ACCEPTING THE TERMS OF THIS AGREEMENT, YOU AND EA EXPRESSLY WAIVE THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION. . . . YOU AND EA AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

*Id.*

The scope of the arbitration provision is expressly broad.  It covers: "[a]ll disputes, claims or controversies arising out of or relating to this Agreement, any EA Service and its marketing, or the relationship between you and EA . . . includ[ing] claims that accrued before you entered into this Agreement."  *Id.*  The arbitration provision further states that:

> [a]ny election to arbitrate by one party shall be final and binding on the other. The arbitration shall be administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules and, where appropriate, the AAA's Supplementary Procedures for Consumer Related Disputes ("AAA Consumer Rules"), both of which are available at the AAA website www.adr.org.

*Id.*

### III.   ARGUMENT

Plaintiff affirmatively agreed to EA's User Agreement, including its broad arbitration provision and class action waiver, when he installed *FIFA 20* and *Madden NFL 20*.  The Federal Arbitration Act ("FAA") requires the Court to enforce the arbitration provision as written and compel Plaintiff to arbitrate his dispute with EA on an individual basis.

#### A.   The Federal Arbitration Act Governs the Arbitration Provision

Congress enacted the FAA to reverse the "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also* 9 U.S.C. § 1, et seq.  Under the FAA, courts must enforce arbitration agreements as written because the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012).  Indeed, the Supreme Court recently reaffirmed that the FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.'" *Epic Systems*, 138 S. Ct. at 1621. "[T]he Act leaves no place for the exercise of discretion . . . but instead mandates that . . . courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  The FAA's heavy presumption of arbitrability requires district courts to resolve all doubt as to the scope of arbitrable issues in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, (1983); *Volt Info. Sciences, Inc. v. Bd. Of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476–77 (1989).

Judicial review of an arbitration agreement is thus generally limited to two gateway issues: "(1) whether a valid agreement to arbitrate exists and . . . (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).  When the answer to both questions is yes, courts enforce the agreement in accordance with its terms.  *See Chiron Corp. v. Ortho Diagnostic Sys.*, Inc., 207 F. 3d 1126, 1130 (9th Cir. 2000); *see also In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d 1285, 1289 (N.D. Cal. 2018).

1525677

Where, as here, the parties have "clear[ly] and unmistakab[ly]" delegated questions of arbitrability to the arbitrator, a court's role is limited to determining the effectiveness of the delegation clause.  *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue."); *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017).

## B.  EA's User Agreement is Valid and Enforceable

In order to determine whether a valid arbitration agreement exists, the Court must "apply ordinary state-law principles [governing] contracts."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Under California law, the existence of an agreement to arbitrate is demonstrated by mutual assent, manifested by either words or acts.  *See Swift v. Zynga Game Network Inc.*, 805 F. Supp. 2d 904, 910 (N.D. Cal. 2011).

This Court has long recognized that software and website users manifest assent and form valid arbitration agreements when, presented with agreements that include arbitration provisions, they click a button or check a box indicating they have read and agree to the terms of the agreement.  *See In re Nexus 6P Products Liability Litigation*, 293 F. Supp. 3d 888 (N.D. Cal. 2018) (Freeman, J.) ("[C]ourts have often enforced such agreements when the user had actual notice of the Terms of Use or was required to affirmatively acknowledge the Terms of Use before completing his online purchase." (internal quotation marks omitted)).[2]

Here, Plaintiff was required to click a button affirmatively indicating he accepted the User Agreement before he could access and play *FIFA 20* or *Madden NFL 20*.  A user cannot play

---

[2] *See also Zynga Game Network, Inc.*, 805 F. Supp. 2d at 911–12 (enforcing arbitration clause where plaintiff clicked an "Accept" button placed above hyperlinked statement indicating that clicking the button constituted assent to terms of service); *Cooper v. Adobe Systems, Inc.*, No. 18-cv-06742-BLF, 2019 WL 5102609, at *5 (N.D. Cal. Oct. 11, 2019) (Freeman, J.) ("Courts have consistently enforced similar 'clickwrap' or 'browsewrap' agreements formed on the Internet where the user had actual notice of the agreement or where the user was required—as [plaintiff] was—to affirmatively acknowledge the agreement before proceeding with use of the service."); *Moule v. UPS*, No. 1:16-cv-00102-JLT, 2016 WL 3648961, at *5 (E.D. Cal. July 7, 2016) (enforcing arbitration clause where user was required to click a "Yes" button below hyperlinked statement indicating that clicking the button constituted assent to terms and conditions).

7
DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:20- cv-05672

1525677

these games after installation without first affirmatively agreeing to the EA User Agreement.  The fact that EA's User Agreement included an arbitration provision pursuant to which EA and users agree to arbitrate disputes on an individual basis was visible on the screen requesting Plaintiff's assent to the agreement, and Plaintiff could scroll through the entire agreement on that screen.  Notably, courts have enforced agreements to arbitrate where users had far less notice of the arbitration provision and were not required to affirmatively indicate their agreement to the terms by clicking a button.  *See Gutierrez v. FriendFinder Networks, Inc.*, No. 18-cv-05918-BLF, 2019 WL 1974900, at *7–8 (N.D. Cal. May 3, 2019) (Freeman, J.) (holding that although plaintiff was never required to expressly agree to website's terms of use, plaintiff was bound by the terms' arbitration provision when a customer service representative had informed plaintiff that he needed to agree to the terms in order to use the website); *Devries v. Experian Info. Sols., Inc.*, No. 16-cv-02953-WHO, 2017 WL 733096, at *5–7 (N.D. Cal. Feb. 24, 2017) (enforcing arbitration clause where notice above "Submit Secure Order" button informed customers that they agreed to terms by submitting order).[3]  The law is clear that by clicking a button indicating that he had read and accepted EA's User Agreement and Privacy & Cookie Policy, Plaintiff assented to that agreement, including the terms of its arbitration provision.[4]  Indeed, for this reason, the Eastern District of New York recently held that the User Agreement's arbitration provision is valid and enforceable.  *See Bassett v. Electronic Arts, Inc.*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015).

---

[3] *See also Crawford v. Beachbody*, LLC, No. 14-cv-1583-GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014), at *3 (enforcing arbitration provision where hyperlinked notice in contrasting color was placed immediately above a "Place Order" button); *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 78–79 (2d Cir. 2017) (Uber customers who clicked "Register" button were bound by arbitration agreement found in terms of use that were hyperlinked on screen in smartphone application);

[4] Any argument that EA's User Agreement is unenforceable because it is unconscionable lacks merit.  As an initial matter, the parties have delegated disputes on conscionability to the arbitrator.  *See* Section III(C), *infra*.  Moreover, invalidating an arbitration agreement under California law requires a two-part showing: the party opposing arbitration has the burden of proving that the arbitration provision is both procedurally and substantively unconscionable.  *Kairi v. Supershuttle Int'l*, No. 08-cv-02993-JSW, 2012 WL 4343220, at *7 (N.D. Cal. Sept. 20, 2012) (*citing Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 795 (2012)).  Plaintiff cannot satisfy these requirements.  *See Meridian Project Sys. Inc. v. Hardin Constr. Co.*, 426 F.Supp.2d 1101, 1107 (E.D. Cal. 2006) (holding "shrinkwrap" end user agreement not unconscionable because buyers had opportunity to return items); *Hidalgo v. Tesla Motors, Inc.*, No. 5:15-cv-05185-BIF, 2016 WL 3541198, at *3 (N.D. Cal. June 29, 2016) ("[E]ven if [plaintiff] did not read the arbitration clause or the arbitration agreement, that does not make it procedurally unconscionable.").

DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:20- cv-05672

1525677

C.    **The Parties Clearly and Unmistakably Delegated Arbitrability to the Arbitrator**

Once the Court finds that Plaintiff agreed to be bound by the arbitration provision contained in EA's User Agreement, it must send this case to arbitration.  To the extent Plaintiff challenges the enforceability or scope of the arbitration provision, the arbitration clause "clearly and unmistakably" provides that those issues must be decided by an arbitrator, not the Court.  *See Portland Gen. Elec. Co. v. Liberty Mutual Ins. Co.*, 862 F. 3d 981, 985 (9th Cir. 2017).

The arbitration provision states that "arbitration shall be administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules."  Patel Decl., Exh. A. According to the AAA Commercial Arbitration rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Declaration of Adam Lauridsen in support of Defendant's Motion to Compel Arbitration, Exh. A, Section R-7 (pp. 13).

The Ninth Circuit has held that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability to the arbitrator.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  While the *Brennan* court limited its holding to "the facts of the present case, which do involve an arbitration agreement between sophisticated parties," it noted that "the vast majority of the circuits that hold that incorporation of . . . AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts."  *Id.*  Indeed, the court made clear that "[o]ur holding today should not be interpreted to require that the contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent."  *Id.* at 1130; *see also Miller v. Time Warner Cable Inc.*, No. 816-cv-00329, 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) ("[T]he greater weight of authority has concluded that the holding of [*Brennan*] applies similarly to non-sophisticated parties.").

DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:20- cv-05672

1525677

Citing *Brennan*, this Court has held that incorporation of arbitration rules delegating gateway issues to the arbitrator constitutes clear and unmistakable evidence of the parties' intent. *Cooper v. Adobe Sys. Inc*., No. 18-CV-06742-BLF, 2019 WL 5102609, at *6 (N.D. Cal. Oct. 11, 2019) (Freeman, J.) ("Incorporation of arbitration rules, such as the JAMS rules, constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."); *Taylor v. Shutterfly, Inc*., No. 18-CV-00266-BLF, 2018 WL 4334770, at *6 (N.D. Cal. Sept. 11, 2018) (Freeman, J.) ("Incorporation of AAA rules . . . is further evidence that shows the parties' intent to delegate to the arbitrator.").[5]

Because EA's User Agreement is valid and the parties have unambiguously delegated questions of arbitrability to the arbitrator, the Court should compel arbitration of Plaintiff's claims.  *See Cooper*, 2019 WL 5102609 at *4.

### D.     The Arbitration Provision Plainly Encompasses the Dispute at Issue

If the Court finds that the parties did not delegate arbitrability to the arbitrator, it should nonetheless enforce the arbitration provision because the provision plainly encompasses Plaintiff's claims.  *See Chiron Corp.*, 207 F.3d at 1130.

The scope of an arbitration provision is governed by the language used in the arbitration agreement.  *Cape Flattery Ltd. v. Titan Mar. LLC*,  647 F.3d 914, 922–23 (9th Cir. 2011).  Courts must order arbitration absent "*positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 650 (1986) (emphasis added).  The Ninth Circuit instructs that an agreement to arbitrate disputes "relating to" the relationship between the parties is "broad and far reaching." *Chiron Corp*., 207 F.3d at 1131.

Plaintiff's claims fall squarely within the arbitration provision to which he affirmatively

---

[5] *See also Johnson v. Oracle Am. Inc*., No. 17-cv-05157-EDL, 2017 WL 8793341, at *6–9 (N.D. Cal. Nov. 17, 2017) (enforcing arbitration agreement that incorporated AAA and JAMS rules and finding no distinction between incorporation of AAA rules and JAMS rules for purposes of assessing intent to arbitrate); *Caviani v. Mentor Graphics Corp*., No. 19-CV-01645-EMC, 2019 WL 4470820, at *4 (N.D. Cal. Sept. 18, 2019) ("In [the Ninth] Circuit, incorporation of, e.g., JAMS rules by reference is generally sufficient to provide a basis for . . . a finding [that there is a clear and unmistakable agreement to delegate the question of arbitrability to the arbitrator].").

agreed.  The User Agreement states that it "governs [users'] access and use of software products, such as game software contained on disc or downloaded, offered by EA and its subsidiaries ('EA') and related updates, upgrades and features as well as online and mobile services, features, content and websites offered by EA."  Patel Decl., Exh. A.  The arbitration provision is equally broad, encompassing "[a]ll disputes, claims or controversies arising out of or relating to this Agreement, any EA Service and its marketing, or the relationship between you and EA" including "claims that accrued before [Plaintiff] entered into this Agreement."[6]

Plaintiff's claims center around his use of "Ultimate Team Packs", which are packs of virtual professional players that users may acquire when competing in the "Ultimate Team Mode" of an EA game.  Users obtain Ultimate Team Packs either with in-game currency or through game play.  Plaintiff's theory of liability hinges on how the Ultimate Team Packs operate within his and other players' gaming experience.  This is clearly a claim "arising out of or relating to . . . any EA Service . . . or the relationship between [Plaintiff] and EA."  Further, the arbitration provision he assented to when installing *FIFA 20* and *Madden NFL 20* covers all of his claims regardless of when they accrued.

Because "a valid agreement to arbitrate exists" and that "agreement encompasses the dispute at issue," "the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."  *Chiron*, 207 F.3d at 1130.

### E.    Plaintiff's Claims Should Be Dismissed

When a court determines that all of a plaintiff's claims are subject to arbitration, "it may either stay the action or dismiss it outright."  *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014).  EA requests that the Court dismiss this action.  *See Lowen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 966 (N.D. Cal. 2015) ("Because the Court concludes that arbitration should be compelled, it has the discretion to stay the case under 9 U.S.C. § 3 or dismiss the

---

[6] The arbitration provision explicitly carves out disputes that are not subject to arbitration: "claims (i) regarding the infringement, protection or validity of your, EA's or EA's licensors' trade secrets or copyright, trademark or patent rights; (ii) if you reside in Australia, to enforce a statutory consumer right under Australia consumer law; and (iii) brought in small claims court." Patel Decl., Exh. A.  Plaintiff's claims do not fall within any of these exceptions.

litigation entirely.  Neither side has presented any compelling reason to keep this case on the Court's docket and the case is hereby dismissed.").

## IV.     CONCLUSION

For the foregoing reasons, EA respectfully requests that the Court compel individual arbitration of Plaintiff's claims and dismiss this case.


Dated:  October 30, 2020                                KEKER, VAN NEST & PETERS LLP


                                          By:    */s/ R. James Slaughter*
                                                 R. JAMES SLAUGHTER
                                                 R. ADAM LAURIDSEN
                                                 DAVID J. ROSEN

                                                 Attorneys for Defendant ELECTRONIC
                                                 ARTS INC.

DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:20- cv-05672

1525677