KEKER, VAN NEST & PETERS LLP
R. JAMES SLAUGHTER - # 192813
rslaughter@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
DAVID J. ROSEN - # 296139
drosen@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
ELECTRONIC ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KEVIN RAMIREZ, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELECTRONIC ARTS INC.,<br><br>Defendant. | Case No. 5:20- cv-05672<br><br>**DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER FEDRAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>Date:        February 25, 2021<br>Time:       9:00 a.m.<br>Dept.:       Courtroom 3 – 5th Floor<br>Judge:      Hon. Beth Labson Freeman<br><br>Date Filed:  August 13, 2020<br><br>Trial Date:  Not Yet Assigned |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO DISMISS
Case No. 5:20- cv-05672

1521562

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................1

ISSUES TO BE DECIDED ...............................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................2

I.     INTRODUCTION ...............................................................................................2

II.    FACTS ...............................................................................................................4

III.   LEGAL STANDARD ........................................................................................5

IV.   ARGUMENT .....................................................................................................6

     A.    The EA Games are not a "Slot Machine or Device" ................................7

         1.    The EA Games are Predominantly Games of Skill ....................7

         2.    The EA Games are not a "machine, apparatus, or device" ........9

         3.    Users of EA Games do not receive a "thing of value" through the alleged operation of the Ultimate Team Packs ........................10

     B.    Plaintiff's UCL Claim Fails ................................................................13

         1.    Plaintiff Lacks Standing Under the UCL Because He Suffered No Economic Injury ..................................................................13

         2.    Plaintiff Fails To State a Claim Under the "Unlawful" Prong of the UCL ........................................................................................16

         3.    Plaintiff Fails To State A Claim Under the "Unfair" Prong of the UCL ........................................................................................17

     C.    Plaintiff's CLRA Claim Fails ...............................................................18

         1.    The Plainitff's CLRA allegations do not identify any transactions for "goods" or "services" .....................................................18

         2.    Plaintiff's CLRA Claims Lack Particularity ............................19

     D.    Plaintiff's Unjust Enrichment Claim Fails ...........................................20

V.    CONCLUSION ................................................................................................20

i

1521562

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alvarez v. Chevron Corp.*,
  656 F.3d 925 (9th Cir. 2011) ...............................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................................5

*Chaset v. Fleer/Skybox Int'l., LP*,
  300 F.3d 1083 (9th Cir. 2002) .............................................................................15

*Conservation Force v. Salazar*,
  646 F.3d 1240 (9th Cir. 2011) ...............................................................................5

*Doe v. Epic Games, Inc.*,
  435 F.Supp.3d 1024 (N.D. Cal. 2020) ..................................................................19

*Eisen v. Porsche Cars N. Am., Inc.*,
  No. CV 11-9405 CAS, 2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ...................19

*Epic Systems Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) .........................................................................................12

*ESG Capital Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016) .............................................................................20

*Fairbanks v. Super. Ct.*,
  46 Cal. 4th 56 (2009) ............................................................................................18

*Fife v. Facebook, Inc.*,
  905 F. Supp. 2d 989 (N.D. Cal. 2012) ..................................................................19

*Foreman v. Bank of Am., N.A.*,
  401 F. Supp. 3d 914 (N.D. Cal. 2019) ....................................................................6

*People ex rel. Green v. Grewal*,
  61 Cal.4th 544 (2015) .............................................................................................9

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) .............................................................................14

*Iezza v. Saxon Mortg. Servs., Inc.*,
  No. 10-03634 DDP, 2010 WL 3834041 (C.D. Cal. Sept. 28, 2010) ...................20

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ELECTRONIC ARTS
INC.'S MOTION TO DISMISS
Case No. 5:20- cv-05672

1521562

*Johnson v. Mitsubishi Digit. Elecs. Am., Inc.*,
   365 Fed. Appx. 830 (9th Cir.2010).................................................................15

*Kearney v. Hyundai Motor Am.*,
   No. SACV09-1298-JST, 2010 WL 8251077 (C.D. Cal. Dec. 17, 2010)................................19

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .............................................................6, 19

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ..............................................................6

*Kleidman v. U.S. Specialty Ins. Co.*,
   No. 5:14-CV-05158 HRL, 2015 WL 556409 (N.D. Cal. Feb. 10, 2015) ..............................16

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ....................................................................14

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)........................................................................17

*Major League Baseball Properties, Inc. v. Price*,
   105 F.Supp.2d 46 (E.D.N.Y. 2000) .........................................................16

*Mason v. Machine Zone, Inc.*,
   140 F.Supp.3d 457 (D. Md. 2015) ..................................................... *passim*

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) .............................................................5

*Papasan v. Allain*,
   478 U.S. 265 (1986)........................................................................5

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583 (2008) ............................................................14

*Pirozzi v. Apple, Inc.*,
   966 F. Supp. 2d 909 (N.D. Cal. 2013) .....................................................19

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
   223 Cal. App. 4th 1105 (2014) ............................................................16

*Price v. Pinnacle Brands, Inc.*,
   138 F.3d 602 (5th Cir. 1998) ..........................................................13, 16

*Reyes-Aguilar v. Bank of Am.*,
   No. 13-CV-05764-JCS, 2014 WL 2153792 (N.D. Cal. Mar. 20, 2014)...............................6

*Rizo v. Yovino*,
   950 F.3d 1217 (9th Cir. 2020) ............................................................12

iii

1521562

*Sanders v. Apple Inc.*,
   672 F.Supp.2d 978 (N.D. Cal. 2009) ................................................................................20

*Soto v. Sky Union, LLC*,
   159 F.Supp.3d 871 (N.D. Ill. 2016) ...........................................................................11, 12

*State of California v. Iipay Nation of Santa Ysabel*,
   898 F.3d 960 (9th Cir. 2018) ..........................................................................................17

*Tietsworth v. Sears, Roebuck and Co.*,
   2011 WL 3240563 (N.D. Cal. July 29, 2011) .................................................................17

*Trinkle v. California State Lottery*,
   105 Cal. App. 4th 1401 (2003) ......................................................................................6, 7

*U.S. v. E.C. Investments, Inc.*,
   77 F.3d 327 (9th Cir. 1996) .............................................................................................17

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...........................................................................................6

*West v. Palo Alto Hous. Corp.*,
   No. 17-CV-00238-LHK, 2019 WL 2549218 (N.D. Cal. June 20, 2019) ...........................17

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ....................................................................................6, 16

**Statutes**

18 U.S.C. § 1955 ......................................................................................................................16

31 U.S.C. §§ 5361–5367 ..........................................................................................................16

Cal. Bus. & Profs. Code §§ 17200 et seq. ..................................................................................1

Cal. Civ. Code §§ 1750 et seq. ...................................................................................................1

Cal. Civ. Code § 1761(a) ..........................................................................................................18

Cal. Civ. Code § 1770(a)(14) ...................................................................................................18

Cal. Penal Code § 330 ....................................................................................................... *passim*

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ...................................................................................10

Fed. R. Civ. P. Rule 9(b) ............................................................................................................6

Fed. R. Civ. P. 12(b)(6) .........................................................................................................2, 5

iv

1521562

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE ON **February 25, 2021, at 9:00 a.m**., or as soon thereafter as the matter can be heard, in Courtroom 3 - 5th Floor of the United States District Courthouse located at 280 South 1st Street, San Jose, California 95113, Defendant Electronic Arts Inc. ("EA") will and hereby does move the for an order dismissing the First, Second and Third Causes of Action in the Complaint of Plaintiff Kevin Ramirez ("Plaintiff") under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief may be granted.  EA's Motion to Dismiss is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice with lodged exhibits, the arguments of counsel, and any other evidence the Court may allow.

### ISSUES TO BE DECIDED

1.      Whether Plaintiff can establish that EA's video games are illegal "slot machines or devices" under California Penal Code § 330b.

2.      Whether Plaintiff lacks standing under California's Unfair Competition Law, Cal. Bus. & Profs. Code §§ 17200 et seq. ("UCL").

3.      Whether Plaintiff fails to allege unlawful or unfair conduct by EA under the UCL.

4.      Whether Plaintiff fails to state a claim under the Consumer Legal Remedies Act, Cal. Civ. Code §§1750 et seq. ("CLRA").

5.      Whether Plaintiff fails to state a claim for unjust enrichment.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO DISMISS
Case No. 5:20- cv-05672

1521562

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

All of Plaintiff's causes of action rest on the baseless assertion that including an alleged "loot box" feature in EA's video games transforms those games into illegal "slot machines or devices" under the California Penal Code.  No court has held that a loot box feature in a video game satisfies the elements of the California Penal Code's definition of a slot machine.  On the contrary, every court to consider that proposition has rejected it.  This Court need not even reach that issue here because, as EA explains in its concurrently filed Motion to Compel Arbitration, Plaintiff affirmatively agreed to arbitrate his claims against EA.  But if the Motion to Compel Arbitration is denied, the Court should dismiss Plaintiff's complaint under F.R.C.P. 12(b)(6) for failure to state claims upon which relief may be granted.

Plaintiff alleges that he plays two EA video games:  *FIFA*, a game based on professional international soccer; and *Madden NFL*, a game based on professional American football.  *See* Compl. ¶¶ 8, 26-27.  Both games offer an optional "Ultimate Team Mode" that allows users "to collect virtual current and former professional players in order to build and compete as a personalized team."  *Id.* ¶ 25.  A user can play *FIFA* or *Madden NFL* and never use Ultimate Team Mode.

When competing in Ultimate Team Mode, a user may open "Ultimate Team Packs," which include virtual representations of professional players whom the user may control when competing against other users in games.  The user "buys" an Ultimate Team Pack with virtual currency, which can be earned through in-game performance or purchased with cash.  *Id.* ¶¶ 36-37.  Because virtual currency may be accumulated through in-game play, a user may acquire Ultimate Team Packs without spending any real money.  The Complaint repeatedly refers to the Ultimate Team Pack as a "Loot Box."

According to Plaintiff's main legal theory, the EA video games are illegal because they fall under a section of the California penal code designed to regulate slot machines—Section 330b.  Unsurprisingly, the elements of Section 330b bear little resemblance to the EA video games that the Plaintiff asks the Court to regulate as gambling devices.  Section 330b explicitly

1521562

excludes "[p]inball and other amusement machines or devices, which are predominantly games of skill." There is no dispute that *FIFA* and *Madden NFL* are predominantly games of skill. Plaintiff improperly excises one in-game feature—the Ultimate Team Pack—and alleges that it includes an element of chance, while ignoring the larger game. As a court has already held in rejecting an identical attempt to define a video game as an illegal slot machine under Section 330b based on a "loot box" feature within the game, permitting a plaintiff to isolate one particular chance-based aspect of a game would read the "predominantly games of skill" exception out of the statute. *See Mason v. Machine Zone, Inc.*, 140 F.Supp.3d 457, 463 (D. Md. 2015). That a single feature within a mode of the EA games (the Ultimate Team Pack) includes an element of chance does not transform the games into illegal slot machines.

Even if *FIFA* and *Madden NFL* were not predominantly games of skill, they would still fail to satisfy Section 330b's definition of an illegal slot machine or device. Whereas Section 330b contemplates the operation of physical machines or devices, the EA games (and the modes and features within them) are pure software. And whereas Section 330b contemplates a machine or device that dispenses prizes in cash (or something that be exchanged for cash), the prize Plaintiff identifies—the virtual professional players within an Ultimate Team Pack—can only be used within the confines of the EA game in which they are acquired.

Instead of focusing his Complaint on allegations concerning the requirements of Section 330b of the Penal Code, Plaintiff suggests that his legal theory is so obvious that alleged facts are unnecessary. Plaintiff asserts that all governments agree that Loot Boxes should be considered gambling devices. *See* Compl. ¶ 9. There is no such agreement, as Plaintiff's subsequent allegations reveal.[1] In any event, the question before this Court is not whether there is a consensus among policy makers about how and whether loot boxes in video games should be regulated. Rather, the core legal question on which all of Plaintiff's claims depend is whether

---

[1] For example, Plaintiff alleges that lawmakers in several states have introduced legislation to prohibit in-game Loot Boxes. Compl. ¶ 86. If Plaintiff were correct that all governments agree that Loot Boxes are illegal gambling devices, such legislative efforts would be superfluous. To the extent any common understanding is inferable from the numerous legislative and regulatory reform efforts alleged by Plaintiff, it is that most existing laws prohibiting or regulating gambling ***do not*** apply to in-game Loot Boxes.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO DISMISS
Case No. 5:20- cv-05672

1521562

EA's video games are illegal "slot machines or devices" under **current** California law.  They are not.  The Complaint is thus fatally deficient.

Although Plaintiff's flawed reading of the California Penal Code is fatal to each of the three alleged causes of action, the Complaint suffers from other defects as well.  For example, the UCL claim requires that Plaintiff plead an "economic injury," but Plaintiff does not allege he suffered an economic injury from any transaction with EA.  Plaintiff also alleges that EA violated the UCL by engaging in unfair business practices, including misleading parents of minors.  But Plaintiff does not allege that he is a minor or a parent of a minor, and thus lacks standing to bring claims on their behalf.  And with respect to his CLRA claim, Plaintiff fails to allege anything that satisfies the CLRA's definition of consumer "goods" or "services."

In sum, the Complaint fails to state a claim against EA and should be dismissed.

## II.    FACTS

The Complaint references several of EA's sports franchise games.  *See* Compl. ¶ 24.  All of EA's sports franchise games, including *FIFA* and *Madden NFL*, are sports simulations, in which the purpose of the game is to compete using one's real-time controls to win a virtual sporting competition.  The manual controls within the game are complex and varied; a user must learn many combinations in order to competently maneuver the players on his team in competition.  *See* EA's Request for Judicial Notice (RJN), Ex. C (Microsoft Xbox console). *see also* https://www.ea.com/able/resources/fifa/fifa-20/xbox-one/controller-settings (list of Xbox controls for *FIFA 20*). The games can be run on various devices, including game consoles, PCs, and mobile devices.  Compl. ¶ 21.  EA does not manufacture or sell any of these devices.

As Plaintiff alleges, "these sports franchise games include different modes of play.  Gamers can choose to participate in challenges, play against the computer, or play online in challenges, games, leagues, and tournaments."  Compl. ¶ 30.  Some modes allow users to compete against other users in real time.  In the Ultimate Team Mode, a user fields a fantasy team that the user builds by acquiring current and former professional players in order to "compete as a personalized team."  Compl. ¶ 25.  When in Ultimate Team Mode, the user acquires the players through the "Ultimate Team Pack" feature.  *See, e.g.*, Compl. ¶¶ 16, 31.  The users in Ultimate

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ELECTRONIC ARTS
INC.'S MOTION TO DISMISS
Case No. 5:20- cv-05672

1521562

Team Mode field their personalized teams in games against other users who have built their own fantasy teams from Ultimate Team Packs.  Compl. ¶ 31.

Ultimate Team Packs cannot be purchased using real money.  A user obtains a Pack using virtual currency, which varies depending on the game.  For example, in *Madden NFL*, a game based on professional American football, a user selects an Ultimate Team Pack using "Madden Cash."  *See* Compl. ¶ 36.  In *FIFA*, a game based on competitive international soccer, there are two forms of virtual currency: FIFA Points and FUT Coins.  FIFA Points are purchased with real money, but FUT Coins are earned through the user's in-game performance.  *See* Compl. ¶ 37.  A user may acquire Ultimate Team Packs with either FIFA Points or FUT Coins.

Plaintiff alleges that he bought two EA games: *FIFA* and *Madden NFL*.  He allegedly plays these games on a Microsoft Xbox console.  *Id.* ¶ 16.  Plaintiff also generally alleges that he has spent $600 on acquiring Ultimate Team Packs, but he only identifies one such acquisition— the purchase of an Ultimate Team Pack in *FIFA* in approximately June 2020.  *Id.* ¶ 16.  At that time, Plaintiff's use of the *FIFA* game was governed by the terms of EA's User Agreement.  RJN, Ex. D.  Plaintiff does not allege how he acquired the Ultimate Team Pack in *FIFA* in June 2020; he does not say whether he used FIFA Points or FUT Coins.  Nor does Plaintiff allege that he bought virtual currency from EA, in any form for any game.

## III.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011).  A complaint should be dismissed where it "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (alterations and internal quotation marks omitted).

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO DISMISS
Case No. 5:20- cv-05672

1521562

1    A pleading must allege enough facts to state a facially plausible claim for relief.  *Ashcroft*,

2 556 U.S. at 679.  A claim is plausible when the plaintiff alleges facts allowing the court to

3 reasonably infer liability for the alleged misconduct.  *Id*. at 678.  Although allegations of material

4 fact are taken as true and construed in the light most favorable to the plaintiff, *Wilson v. Hewlett-*

5 *Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012), courts "disregard threadbare recitals of the

6 elements of a cause of action" and "unsupported legal conclusions," *Alvarez v. Chevron Corp.*,

7 656 F.3d 925, 930 (9th Cir. 2011) (affirming dismissal with prejudice).

8    In addition, Fed. R. Civ. P. Rule 9(b) applies to claims grounded in fraud.  *See Kearns v.*

9 *Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  These claims should be dismissed where

10 the plaintiff failed to allege "the who, what, when, where and how" of any allegedly false

11 representations.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

12    When Plaintiff's claims are fatally defective, the Court should grant a motion to dismiss

13 with prejudice, because it is "clear that the complaint could not be saved by amendment."

14 *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).  Dismissal with prejudice

15 follows when a complaint's core theories of liability are precluded by "question[s] of law that

16 amendment cannot cure."  *Foreman v. Bank of Am., N.A.*, 401 F. Supp. 3d 914, 924 (N.D. Cal.

17 2019); *see also Reyes-Aguilar v. Bank of Am.*, No. 13-CV-05764-JCS, 2014 WL 2153792, at *10

18 (N.D. Cal. Mar. 20, 2014) (dismissing with prejudice claim that relied on "fatally flawed"

19 theory).

20 **IV.    ARGUMENT**

21    All of Plaintiff's causes of action depend on the flawed premise that EA's video games are

22 illegal slot machines under California Penal Code Section 330b.[2]  Because the rejection of that

23 premise is sufficient to dispose of all of Plaintiff's legal claims, Section 330b is addressed first

24 ――――――――――――――――
[2] The Complaint also cites to Penal Code sections 330a and 330.1.  *See* Compl. ¶ 93.  Sections
25 330a, 330b, and 330.1 each prohibit "slot machine[s] or device[s]" as defined in each section.
*See Trinkle v. California State Lottery*, 105 Cal. App. 4th 1401, 1409–10 (2003) (treating §§ 330b
26 & 330.1 identically).  Aside from the lone citation to Sections 330a and 330.1 in paragraph 93 of
the Complaint, Plaintiff's allegations do not distinguish Section 330b from Sections 330a and
27 330.1  Because Plaintiff cannot establish that EA's games are slot machines, Plaintiff's claims fail
under all three sections.

28

1521562

below.  Plaintiff's causes of action concerning the UCL, the CLRA, and Unjust Enrichment suffer from additional defects that are addressed separately in the sections that follow.

### A.    The EA Games are not a "Slot Machine or Device"

California Penal Code section 330b(d) defines a "slot machine or device" as: (1) a "machine, apparatus, or device" activated by "the insertion of money or [some] other object"; (2) "the operation of the machine [must be] unpredictable and governed by chance"; and (3) "by reason of the chance operation of the machine, the user may become entitled to receive a thing of value." *Trinkle v. Cal. State Lottery*, 105 Cal. App. 4th 1401, 1410 (2003).  Section 330b(f) further narrows this definition, excluding games that are predominantly of skill: "Pinball and other amusement machines or devices, which are predominantly games of skill, whether affording the opportunity of additional chances or free plays or not, are not included within the term slot machine or device, as defined in this section."  In other words, a game that is "predominantly of skill" is not a slot machine under the California Penal Code even if it otherwise meets the three elements of Section 330b(d).

Plaintiff cannot show that EA violates Section 330b of the California Penal Code for three independent reasons, each of which is dispositive.  First, the EA games cannot be slot machines or devices because they are predominantly games of skill.  Second, neither the EA games nor any features within those games are a "machine, apparatus, or device."  Third, the users of the EA games do not receive "a thing of value" by reason of the alleged chance operation of the Ultimate Team Packs within the EA games.

### 1.    The EA Games are Predominantly Games of Skill

Section 330b(f) excludes games that "are predominantly of skill," such as pinball and other amusement devices, from the statute's definition of slot machines or devices.  There is no dispute that the games Plaintiff alleged to have played—*FIFA* and *Madden NFL*—are primarily games of skill.  Both are sports simulation games, where the purpose of the game is to compete using one's real-time controls to win a virtual sporting competition—a soccer game in the case of *FIFA*, a football game in the case of *Madden NFL*.  *See* Compl. ¶¶ 26-27; *see also* RJN, Ex. A (FIFA 21 Video Game) & Ex. B (Madden NFL 21 Video Game).  The controls a user manually

7

operates to command the players in the games are more complex than the controls of a traditional pinball machine, where the user tries to activate flippers at the right time to hit bumpers.  *See* RJN, Ex. C (Microsoft Xbox Console).

In some modes of the game, users compete against other users, playing simulated sports games in real time.  Compl. ¶¶ 30, 31.  The Ultimate Team Mode is one such mode.  In Ultimate Team Mode, the games are played with personalized fantasy teams that the users build through acquiring virtual professional players from Ultimate Team Packs.  *Id.* ¶¶ 16, 25.  When competing in games in Ultimate Team Mode, the users operate the same manual controls that they use in other modes.  The difference is that the users playing Ultimate Team Mode are controlling players that they acquired through Ultimate Team Packs.

Plaintiff carefully avoids any allegations about the skilled aspects of *FIFA* and *Madden NFL* games.  Instead, Plaintiff isolates one optional feature of one mode of the game:  the Ultimate Team Pack.  Plaintiff repeatedly admits that the Ultimate Team Pack is an "in-game" option; it is not the game itself.  *See, e.g.*, Compl. ¶¶ 16, 32, 36-37.

Plaintiff's approach—isolating a "chance" element of a larger game—renders meaningless the reference in Section 330b(f) to pinball being "predominantly" a game of skill.  If one can classify a larger game of skill as a "slot machine" by focusing on a feature of chance—such as the random "match" prize in pinball—then a game must be ***entirely*** of skill to fall within the exception.

A federal district court applying California law recently rejected an identical effort to write the "predominantly games of skill" exception out of the statute.  In *Mason v. Machine Zone, Inc.*, 140 F.Supp.3d 457 (D. Md. 2015), a class action complaint was filed against the producer of a mobile video game known as Game of War ("GoW").  When playing GoW, players "construct a simulated empire comprising resource plots, buildings, troops, and a 'hero.'"  *Id.* at 459. "Some players, impatient for conquest, exercise an option to purchase virtual 'gold' to improve their virtual towns and hasten their advancement in the game."  *Id.* at 460.  The players spent their virtual gold at an in-game "casino" to wager on a randomized "virtual spinning wheel" where, "[a]fter each spin, players receive a virtual prize ranging from an in-game 'resource' such as

8

'wood' or 'stone' (useful elsewhere in the game) to additional chips or 'gold.'"  *Id.*  The plaintiff alleged "that players are more likely to win 'basic items' (e.g., 'wood') than valuable ones (e.g., 'gold')."  *Id.*  The plaintiff singled out the in-game "casino" feature as an unlawful "slot machine or device" under Cal. Penal Code § 330b.

In granting the defendant's motion to dismiss, the court rejected the approach that Plaintiff adopts here in the Complaint:

> The game at issue here is not "Casino"; the game is *GoW*. Plaintiff proffers no authority for the proposition that the Court may excise one particular aspect of an integrated strategy game and evaluate that aspect in isolation. On the contrary, applying Plaintiff's logic, one could excise the free replay and similar chance-based functions of any number of skill-based games—including pinball—and, viewing those aspects in isolation, find the games to violate section 330b. In essence, Plaintiff invites the Court to read the subsection (f) exclusion out of the statute. The Court declines Plaintiff's invitation.

*Mason*, 140 F.Supp.3d at 463.  Just as it was improper for the plaintiff in *Mason* to excise the "casino" aspect of GoW, it is improper for Plaintiff here to excise the "Ultimate Team Pack" aspect of *FIFA* or *Madden NFL*.  This Court should likewise decline the invitation to write the exception of Section 330b(f) out of the statute.

## 2. The EA Games are not a "machine, apparatus, or device"

Even if EA's games were not games of skill, Section 330 would not apply because EA's games are not a "machine, apparatus or device."  Plaintiff alleges that the Ultimate Team Pack—a digital feature within a single mode of EA's software game—is a "device" under Section 330b(d) of the California Penal Code.  *See* Compl. ¶ 93; *see also id.* ¶ 109(d).  EA's games, like all software, require a device to be used.  But EA does not manufacture or sell any such device.  Indeed, the only "devices" Plaintiff identifies in the Complaint are sold by other independent companies, such as Microsoft Xbox, Sony PlayStation, and Apple iPhones.  *See id.* ¶¶ 21, 23.

The Court should reject Plaintiff's novel interpretation of Section 330b.  Although several courts have recognized that software ***combined*** with hardware by a defendant can be a "device," *see People ex rel. Green v. Grewal*, 61 Cal.4th 544, 562 (2015), no court has ever held that software standing alone is a "machine, apparatus, or device" under Section 330b.  Indeed, the

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ELECTRONIC ARTS
INC.'S MOTION TO DISMISS
Case No. 5:20- cv-05672

1521562

court in *Mason* rejected this interpretation in dismissing the complaint in that case.  As mentioned above, the plaintiff there alleged that a "casino" feature in the "GoW" video game was an illegal slot machine or gambling device.  Users could download GoW onto their mobile devices from an app store.  *Mason*, 140 F.Supp.3d at 460.  As is the case here, there was no dispute that the GoW video game and its features were software.

In granting the defendant's motion to dismiss, the court held that "GoW's Casino function is not a 'slot machine or device.'"  *Id.* at 463.  The most natural reading of the phrase "machine, apparatus, or device," the court explained, "calls to mind a piece of equipment, just as the phrase 'slot machine' calls to mind a physical terminal with movable parts and flashing lights."  *Id.* at 462-63.  The court cited Black's Law Dictionary (10th ed. 2014), which defines device as a "mechanical invention" that may be "an apparatus or an article of manufacture" and machine as a "device or apparatus consisting of fixed and moving parts that work together to perform some function."  *Id.* at 463.

Here, Plaintiff's complaint should be dismissed for the same reason.  To decide otherwise would permit Plaintiff to proceed with a theory of liability that reads the phrase "machine, apparatus, or device" out of Section 330b of the California Penal Code.

### 3.     Users of EA Games do not receive a "thing of value" through the alleged operation of the Ultimate Team Packs

Separate and independent of the reasons described above, Plaintiff's claims fail because users do not receive a "thing of value" as a matter of law.  The California Penal Code defines "thing of value" as "any money, coin, currency, check, chip, allowance, token, credit, merchandise, property, or any representative of value."  Cal. Pen. Code § 330.2.  Plaintiff alleges that the "thing of value" here are the virtual items contained in the Ultimate Team Pack that the user "buys" with virtual currency while competing in Ultimate Team Mode.  According to Plaintiff, the virtual items in the Ultimate Team Pack have "symbolic" value:

> The randomized virtual items that may be won by purchasing and opening a Loot Box have value. Research demonstrates that "[i]n general, [] virtual items are valued for many of the same reasons as more tangible commodities." Nevertheless, because "the symbolic value of a virtual good stems from its role and meaning inside the game…A person not part of that social world would probably not see

10

1521562

the good as valuable at all."  Indeed, there would be no incentive to acquire or offer Loot Box items, including cosmetics if they did not have some sort of value to the player.

Compl. ¶ 95 (footnote omitted).  Plaintiff also alleges the existence of black markets for "EA Ultimate Team accounts, items and coins to be bought and sold outside of the game itself."  *Id.* ¶ 98.

Neither the "symbolic value" of the virtual items nor any black market for those items makes them a "thing of value" under Section 330b.  Yet again, Plaintiff seeks to expand an element of Section 330b in a way that no court has done before.  And yet again, a federal court recently rejected the interpretation that Plaintiff alleges in the Complaint.  In *Soto v. Sky Union, LLC*, 159 F.Supp.3d 871 (N.D. Ill. 2016), the court held that a video game called "Castle Clash" was not a slot machine under Section 330b because there was no "item of value."  Castle Clash allowed players to use real money to purchase virtual "gems," which could then be used in the game to enter to win randomly selected in-game virtual prizes called "heroes" and "talents."  *Id.* at 878-81.

The court recognized that, under section 330b(d), "a device is a 'slot machine or device' only if it presents users with the possibility of winning a 'thing of value,' an 'additional chance or right to use the slot machine or device,' or a token that may be exchanged for a thing of value.  Cal. Penal Code 330b(d)."  *Id.* at 879.  Because the "heroes" and "talents" could not be redeemed for real money or sold under the Castle Clash terms of service, the randomized virtual items did not constitute a "thing of value" under the California penal code.  *Id.*

The same is true here.  According to the EA User Agreement, users of EA games agree not to "[s]ell, buy, trade or otherwise transfer or offer to transfer your EA Account, any personal access to EA Services, or any EA Content associated with your EA Account, including EA Virtual Currency and other Entitlements, either within an EA Service or on a third party website, or in connection with any out-of-game transaction, unless expressly authorized by EA."  RJN, Ex. D., § 6.  The terms are clear that "Entitlements include access to digital or unlockable Content additional or enhanced functionality (including multiplayer services); subscriptions; virtual assets; unlock keys or codes, serial codes or online authentication; in-game achievements; virtual points,

11

1521562

1  coins, or currencies." *Id.* § 3.  In short, EA prohibits its users (including Plaintiff) from selling or

2  trading the virtual assets of an Ultimate Team Pack on a black market.  The virtual items in

3  Ultimate Team Packs cannot constitute a "thing of value" under Section 330b based on a

4  prohibited use.  *Soto*, 159 F.Supp.3d at 881.

5       The court in *Soto* also rejected the notion that "[a]dded enjoyment" could be a thing of

6  value: "[P]laintffs do not allege that high quality Heroes and Talents extend gameplay. Instead,

7  they allege that high quality Heroes and Talents *improve* gameplay. Added enjoyment simply

8  does not have measurable worth, and it cannot be a 'thing of value' under section 330b(d)." *Id*.

9       Plaintiff's theory appears to be that the catch-all term at the end of the Penal Code's

10  definition of "thing of value" in Section § 330.2—"or any representative of value"—captures

11  ***anything*** that may represent value to someone, including "symbolic value."  Plaintiff's boundless

12  interpretation is contradicted by the interpretive principle of *ejusdem generis*:  "Where [] a more

13  general term follows more specific terms in a list, the general term is usually understood to

14  embrace only objects similar in nature to those objects enumerated by the preceding specific

15  words." *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018); *Rizo v. Yovino*, 950 F.3d

16  1217, 1225 (9th Cir. 2020) ("[T]he *ejusdem generis* canon provides that the EPA's three specific

17  exceptions cabin the scope of the general exception.").  The Penal Code's definition of "thing of

18  value" lists specific items that can be exchanged for real money.  Cal. Penal Code § 330.2.

19  Nothing in the list suggests that "thing of value" is intended to apply to the subjective value that a

20  user of a video game places on a virtual item he has obtained.

21       As Plaintiff also did with the "predominantly games of skill" exception and the "device"

22  prong of section 330b, he interprets the "thing of value" prong in a way that effectively reads the

23  requirement out of the statute.  By Plaintiff's logic, "a game's reward would be a 'thing of value'

24  any time a user pays to play a game of chance." *Soto*, 159 F.Supp.3d at 879.  When one

25  combines Plaintiff's interpretation of the "thing of value" prong with Plaintiff's interpretation of

26  the "device" prong, nothing is left except the "unpredictable and governed by chance" prong of

27  Section 330b.

28       Plaintiff's expansive interpretation would turn any digital product ordered over the

---

12

1521562

internet into an illegal "slot machine," provided that the contents of the product were in some sense unpredictable. Take the example of traditional baseball cards. Purchasers would buy a pack of cards, which would include several cards of professional baseball players. The contents of the cards would not be known until the buyer opened the pack after purchase—so what the buyer received was unpredictable and governed by chance. *See Price v. Pinnacle Brands, Inc*. 138 F.3d 602, 605-07 (5th Cir. 1998). If that pack of cards is purchased using a website, that website is a "device" under Plaintiff's theory (because it's software running on a phone or tablet or laptop). If the website delivers the pack of cards to the buyer in digital form,[3] and if the buyer in turn alleges that he gains "subjective value" from one or more player cards who turn up in the purchased pack, all of the elements of Section 330b are met under Plaintiff's interpretation—device, chance, and value.

Plaintiff's interpretation of Section 330b has the potential to convert the sale of all sorts of products into illegal "slot machines" if those products are digitized and sold over the internet. If the California Penal Code is to be expanded that far, it should be done through legislative reform, not litigation.

In sum, the EA games are not "slot machines" under Section 330b for three independent reasons, any one of which standing alone is fatal to the Complaint. The EA games are predominantly games of skill, and thus fall under the statutory exception of Section 330b(f). Additionally, the EA games are not illegal slot machines under California law because they don't satisfy the other requirements recited in Section 330b(d): they are not a machine, apparatus, or device; and they do not entitle users to "a thing of value" by reason of the alleged chance operation of the Ultimate Team Packs.

**B.     Plaintiff's UCL Claim Fails**

**1.     Plaintiff Lacks Standing Under the UCL Because He Suffered No Economic Injury**

The UCL has a distinct standing requirement. To establish standing under the UCL, a

---

[3] Long-time manufacturers of traditional trading cards have in fact begun to sell packs of cards in digital form. *See, e.g*., https://play.toppsapps.com/ (last visited Oct. 18, 2020).

plaintiff must show "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322 (2011); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013). Even if a statutory violation may have occurred, if there is no attendant injury or loss to the plaintiff, there is no standing under the UCL. *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1592 (2008) (noting that "the existence of a cause of action does not answer the question of who has standing to bring the claim"). Here, Plaintiff does not allege he suffered an economic injury from any transaction with EA.

Plaintiff alleges that he "most recently spent money to purchase Ultimate Team Pack Loot Boxes in FIFA [in] approximately June 2020." Compl. ¶ 16. But Ultimate Team Packs cannot be purchased with real money; they can only be acquired using two forms of virtual currency—FIFA Points or FUT Coins. *Id.* ¶ 36. FUT Coins can be earned through in-game performance while FIFA Points are purchased with real money. *Id.* ¶ 37. Plaintiff does not allege how he acquired the Ultimate Team Pack in *FIFA*. Nor does he allege that he ever bought FIFA Points (or any other type of virtual currency) from EA.

Regardless of how Plaintiff acquired the *FIFA* Ultimate Team Pack, he lacks UCL standing. If Plaintiff acquired the Ultimate Team Pack using virtual currency earned through game play, there isn't an underlying transaction to which Plaintiff could point to show a "loss or deprivation of money." And even if Plaintiff alleged he spent real money to buy FIFA Points, there would still be no economic injury. There is no allegation or suggestion in the Complaint that FIFA Points are not providing their promised value to users who choose to purchase them.

In similar circumstances in *Mason v. Machine Zone*, the district court found no economic injury (and thus no UCL standing under California law) where the plaintiff tried to tie her injury to the money she had spent on "virtual gold":

> Plaintiff argues that there is "no question that [she] suffered an economic injury by wagering in the Casino" because she "lost $100 between early 2014 and January 2015," typically "$0.60 per spin." But of course Plaintiff was not wagering with *dollars*; she was playing with *virtual gold*. Plaintiff acquired that "gold" in the "gold store," where she exchanged her real-world currency for a nontransferable, revocable license to use virtual currency for entertainment purposes. At the

14

1521562

moment of that antecedent transaction, Plaintiff's "loss," if any, was complete: then and there she had swapped something of value (real money) for something of whimsy (pretend "gold").

*Mason*, 140 F.Supp.3d at 465 (emphasis in original) (internal citations omitted).  Here, if Plaintiff did in fact buy FIFA Points, the analysis in *Mason* applies equally to him.  Just as the plaintiff there "could spend her 'gold' as she pleased within the bounds of Defendant's ToS," *id.*, Plaintiff here could spend his FIFA Points as he pleased within the bounds of EA's User Agreement.  "A plaintiff who has received the benefit of his bargain has no standing under the UCL."  *Id.* at 464 (citing *Johnson v. Mitsubishi Digit. Elecs. Am., Inc.*, 365 Fed. Appx. 830, 832 (9th Cir.2010)).  In sum, Plaintiff has suffered no actionable economic injury.

As the court correctly observed in *Mason*, there is no additional financial "loss" beyond the point of the purchase of virtual currency, which can only be used in the game.  *See id.* at 465. Plaintiff therefore cannot tie his economic injury to how he chose to use his FIFA Points or FUT Coins in the FIFA game.  But even if Plaintiff were permitted to advance such a theory, there would still be no economic injury.  Plaintiff received what he allegedly "paid for" with his virtual currency—an Ultimate Team Pack that he acquired while playing *FIFA*.  *See* Compl. ¶ 16; *see also id.* ¶¶ 41-43.  Indeed, Plaintiff's allegations suggest that he continues to play *FIFA* in Ultimate Team Mode, using the players in the Ultimate Team Pack he acquired in June 2020.  *Id.* ¶ 16.

The Complaint generally alleges that users who elect to purchase Ultimate Team Packs may experience disappointment in the event they find that their favorite players are not in a given pack.  *See* Compl. ¶ 44.  Plaintiff does not allege that he experienced any such disappointment, but even if he had, that disappointment is not an economic injury.  In the context of RICO— which has an "injury to property" standing requirement that is similar to the UCL's "economic injury" requirement—courts have found no injury based on a buyer's disappointment upon finding that a pack of baseball cards did not contain the special player or "insert card" that the buyer coveted.  *See Chaset v. Fleer/Skybox Int'l., LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) ("At the time the plaintiffs purchased the package of cards, which is the time the value of the package should be determined, they received value—eight or ten cards, one of which might be an insert

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO DISMISS
Case No. 5:20- cv-05672

1521562

card—for what they paid as a purchase price. Their disappointment upon not finding an insert card in the package is not an injury to property. They, therefore, lack standing to sue under RICO.").[4]

Like the purchasers of baseball cards, Plaintiff received what he bargained for—a pack of virtual soccer players that he is using to compete in games in Ultimate Team Mode in *FIFA*.

In sum, Plaintiff has alleged no economic injury, and thus lacks standing to bring a claim under the UCL.

## 2.    Plaintiff Fails To State a Claim Under the "Unlawful" Prong of the UCL

To establish a claim under the UCL's unlawful prong, a plaintiff may "borrow[] violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). Where a party seeks to borrow from another statute to allege a violation of the UCL, as Plaintiff does here, he must "allege facts sufficient to show a violation of [the] underlying law." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1133 (2014).  If there is no claim under the predicate act, the claim fails as a matter of law.  *Kleidman v. U.S. Specialty Ins. Co.*, No. 5:14-CV-05158 HRL, 2015 WL 556409, at *2 (N.D. Cal. Feb. 10, 2015).

Plaintiff's allegation that EA's conduct is "unlawful" under the UCL is predicated on alleged violations of:  (1) California Penal Code ¶¶ 330 *et seq.*; (2) The Illegal Gambling Business Act, 18 U.S.C. § 1955; and (3) The Unlawful Internet Gambling Enforcement Act of 2006, 31 U.S.C. §§ 5361–5367.  *See* Compl. ¶ 117.  As for the first borrowed law, any claim based on California Penal Code section 330 fails because EA's games are not "slot machines or devices," as explained above.  The two borrowed federal laws fail for the same reason, as each is

---

[4]*See also Price v. Pinnacle Brands, Inc.* 138 F.3d 602, 607 (5th Cir. 1998) ("We agree with the district court that '[p]laintiffs do not allege that they received something different than precisely what they bargained for: six to twenty cards in a pack with a chance that one of those cards may be of Ken Griffey, Jr.'"); *Major League Baseball Properties, Inc. v. Price*, 105 F.Supp.2d 46, 51 (E.D.N.Y. 2000) ("A card purchaser buying a pack of cards enters into a bargain with the licensors and manufacturers whereby in return for payment the purchaser will receive a random assortment of regular cards and a chance to receive an insert card. This bargain delivers actual value to each party because the chance itself is of value regardless of whether or not the card purchaser later suffers a 'loss.'").

1521562

predicated on a violation of a state's gambling laws.  *See U.S. v. E.C. Investments, Inc.*, 77 F.3d 327, 330 (9th Cir. 1996) (explaining that section 330b is a predicate state offense for 18 U.S.C. § 1955, which requires that the predicate offense be a "violation of the law of the State"); *State of California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960, 965 (9th Cir. 2018) (stating that unlawful Internet gambling occurs where a "bet or wager is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made").

### 3.   Plaintiff Fails To State A Claim Under the "Unfair" Prong of the UCL

Plaintiff alleges that EA has violated the UCL's proscription against "unfair" business practices through violating the same state and federal laws Plaintiff recited under the "unlawful" prong of the UCL.  *See* Compl. ¶ 118(a) (compare with allegations in *id.* ¶ 117).  "Because Plaintiff's unlawful prong claim cannot survive, Plaintiff's unfair prong also must fail."  *West v. Palo Alto Hous. Corp.*, No. 17-CV-00238-LHK, 2019 WL 2549218, at *26 (N.D. Cal. June 20, 2019).

Plaintiff further alleges that EA's business practices are unfair because they "exploit" minors and "mislead" parents of minors.  Compl. ¶ 118(b)-(c).  These allegations also appear to depend on Plaintiff's flawed theory that EA is profiting from illegal gambling.  But even if they do not so depend, the claim fails because Plaintiff lacks standing to bring a UCL claim based on alleged harm to minors and their parents.

To establish standing under the UCL, Plaintiff must allege a particular economic injury he suffered that "resulted" from the allegedly unfair conduct.  *Tietsworth v. Sears, Roebuck and Co.*, 2011 WL 3240563, at *2 (N.D. Cal. July 29, 2011).  As addressed above, Plaintiff lacks standing for all his claims under the UCL because he alleges no economic injury.  With respect to the allegations in Paragraph 118(b)-(c) of the Complaint, Plaintiff lacks standing for the additional reason that he alleges no particularized injury (economic or otherwise) that *he* suffered as a result of any alleged misleading of minors or the patents of minors.  *See id.* at *2-3; *cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992) ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.").  Plaintiff does not allege that he is a

17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO DISMISS
Case No. 5:20- cv-05672

1521562

1    minor or a parent of a minor; he does not have standing to bring claims on their behalf.

2    ### C.    Plaintiff's CLRA Claim Fails

3    Like the other causes of action alleged in the Complaint, Plaintiff's CLRA claim is

4    predicated on alleged violations of California Penal Code § 330.  The sole CLRA provision

5    alleged in the Complaint, Cal. Civ. Code § 1770(a)(14), prohibits "representing that a transaction

6    confers or involves rights, remedies, or obligations that it does not have or involve, or that are

7    ***prohibited by law***."  Compl. ¶ 129 (emphasis added).  Plaintiff alleges that because gambling is

8    prohibited by law, and because transactions involving Ultimate Team Packs are gambling, EA

9    therefore violated the CLRA.  *Id.* ¶ 130.  But as discussed at length above, neither the EA games

10   nor their features are illegal slot machines or devices under the California Penal Code.

11   Accordingly, Plaintiff's CLRA claim fails.

12   Even if Plaintiff could establish that EA games are illegal slot machines, his CLRA claim

13   would still fail for two additional, independent reasons.  First, the CLRA applies only to "the sale

14   or lease of goods or services to a[] consumer," but Plaintiff alleges that EA violated the CLRA by

15   making representations in connection with transactions for digital items—which are neither goods

16   nor services under the statute.  Second, because Plaintiff alleges a misrepresentation, his claims

17   sound in fraud and are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading

18   standard, which he cannot meet.

19   #### 1.    The Plainitff's CLRA allegations do not identify any transactions for "goods" or "services"

20

21   "[T]he Consumers Legal Remedies Act applies only to transactions for the sale or lease of

22   consumer 'goods' or 'services' as those terms are defined in the act."  *Fairbanks v. Super. Ct.*, 46

23   Cal. 4th 56, 65 (2009).  The CLRA defines "goods" as "***tangible chattels*** bought or leased for use

24   primarily for personal, family, or household purposes, including certificates or coupons

25   exchangeable for these goods."  Cal. Civ. Code § 1761(a) (emphasis added).  "Services," are

26   defined as "work, labor, and services for other than a commercial or business use, including

27   services furnished in connection with the sale or repair of goods." *Id*. § 1761(b).  A pack of

28   virtual player cards is neither.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ELECTRONIC ARTS
INC.'S MOTION TO DISMISS
Case No. 5:20- cv-05672

Plaintiff ties the alleged CLRA violation to "[T]ransactions involving Ultimate Team Packs." Compl. ¶ 130. As discussed above, Ultimate Team Packs can only be purchased with virtual EA currency. Virtual currency is not a "tangible chattel." Accordingly, virtual coins or credits bought in-game with real money are not "goods" under the CLRA. *Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012) (dismissing CLRA claim without leave to amend because in-game "credits" purchased with credit cards are not "goods.").

Nor are digital items bought with virtual currency "goods" under the CLRA. *Doe v. Epic Games, Inc.*, 435 F.Supp.3d 1024 (N.D. Cal. 2020). In *Doe*, Plaintiff contended "that the 'digital content' players can acquire through in-App purchases, including 'virtual supplies, ammunition, and skins,' is more akin to a 'real-world' good" than is virtual currency. *Id.* at 1024. The court rejected the argument: "[A]lthough 'supplies' and 'ammunition' may sound tangible, they are, as plaintiff himself agrees, 'digital.'" *Id.*

There is no dispute that the Ultimate Team Packs are digital content. Therefore, Plaintiff has not alleged any transactions for "goods" under the CLRA. Nor has Plaintiff alleged that he has transacted with EA for work, labor, or a "service." Accordingly, Plaintiff's CLRA claim must fail.

### 2.      Plaintiff's CLRA Claims Lack Particularity.

Even if the CLRA applied to the transactions involving digital currency and digital content, Plaintiff's CLRA claims would still fail. CLRA claims "grounded in fraud," such as those alleged here involving purported misrepresentations, "must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Courts have applied this standard to alleged violations of the statutory provisions cited by Plaintiff. *See, e.g.*, *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 923 (N.D. Cal. 2013); *Kearney v. Hyundai Motor Am.*, No. SACV09-1298-JST (MLGx), 2010 WL 8251077, at *5 (C.D. Cal. Dec. 17, 2010). To satisfy Rule 9(b), a plaintiff must "identify the who, what, when, where and how of the misconduct charged, as well as what is false or misleading about [the challenged conduct], and why it is false." *Eisen v. Porsche Cars N. Am., Inc.*, No. CV 11-9405 CAS (FEMx), 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012).

1521562

Plaintiff's allegations fall far short of what Rule 9(b) requires.  Plaintiff does not allege which statements contained the allegedly false representations.  Nor does Plaintiff allege who made such statements, when and where they were made, or how they were misleading.  Without pleading such facts, Plaintiff cannot satisfy Rule 9(b)'s heightened standard.

### D.     Plaintiff's Unjust Enrichment Claim Fails

The majority view in California and the Ninth Circuit is that unjust enrichment is not a standalone claim.  *See ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *Sanders v. Apple Inc.*, 672 F.Supp.2d 978, 989 (N.D. Cal. 2009) (holding that Plaintiffs' unjust enrichment claims "will depend upon the viability of the Plaintiffs' other claims"); *Iezza v. Saxon Mortg. Servs., Inc.*, No. 10-03634 DDP (JCGx), 2010 WL 3834041, at *2 (C.D. Cal. Sept. 28, 2010) ("a claim for unjust enrichment cannot stand alone as an independent claim for relief.").

Even if this Court is of the view that unjust enrichment can be a standalone claim, Plaintiff did not plead it as such in the Complaint.  Plaintiff alleges that EA was unjustly enriched from the compensation it received through the selling of allegedly unlawful gambling devices—the Ultimate Team Packs.  Compl. ¶ 130.  As explained above, the Ultimate Team Packs are not gambling devices under the California Penal Code.  Accordingly, Plaintiff's unjust enrichment claim must fail.

## V.     CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint without leave to amend.

Dated:  October 30, 2020                              KEKER, VAN NEST & PETERS LLP

By:   */s/ R. James Slaughter*
        R. JAMES SLAUGHTER
        R. ADAM LAURIDSEN
        DAVID J. ROSEN
        TAYLOR REEVES

        Attorneys for Defendant
        ELECTRONIC ARTS INC.

1521562