1   BLOOD HURST & O'REARDON, LLP
    TIMOTHY G. BLOOD (149343)
2   THOMAS J. O'REARDON II (247952)
    CRAIG W. STRAUB (249032)
3   501 West Broadway, Suite 1490
    San Diego, CA  92101
4   Tel: 619/338-1100
    619/338-1101 (fax)
5   tblood@bholaw.com
    toreardon@bholaw.com
6   cstraub@bholaw.com

7   LAW OFFICES OF ANDREW J. BROWN
    ANDREW J. BROWN (160562)
8   501 W. Broadway, Suite 1490
    San Diego, CA  92101
9   Tel: 619/501-6550
    andrewb@thebrownlawfirm.com
10
    Attorneys for Plaintiffs
11

12              **UNITED STATES DISTRICT COURT**

13     **NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

14  Kevin Ramirez, on his own behalf and on behalf   Case No. 5:20-cv-05672-BLF
    of all others similarly situated,
15                                                    **JOINT INITIAL CASE MANAGEMENT
                        Plaintiffs,                   STATEMENT**
16
         v.
17                                                    **CLASS ACTION**
    ELECTRONIC ARTS, INC.,
18
                        Defendant.
19                                                    DATE:      November 19, 2020
                                                      TIME:      11:00 a.m.
20
                                                      District Judge Beth Labson Freeman
21                                                    Courtroom 3, 5th Floor

22                                                    Complaint Filed:   August 13, 2020
                                                      Trial Date:        Not Yet Set
23
                                                      **JURY TRIAL DEMANDED**
24

25

26

27

28

BLOOD HURST & O' REARDON, LLP

00170599

Pursuant to the Clerk's Notice (ECF No. 11), Federal Rule of Civil Procedure 26(f), Civil Local Rule 16, and the Standing Order for All Judges of the Northern District of California Re Contents of Joint Case Management Statement, Plaintiff Kevin Ramirez ("Plaintiff") and Defendant Electronic Arts, Inc. ("Defendant" and together with Plaintiff, the "Parties") hereby file their Joint Case Management Statement and Rule 26(f) Report.

**1.      Jurisdiction and Service**

Plaintiff asserts that this Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332(d)(2) of the Class Action Fairness Act. Defendant has been served and does not contest personal jurisdiction or venue. At this time, there are no counter-claims, cross-claims, or third party claims.

**2.      Brief Summary of the Facts and Legal Issues**

      **a.      Plaintiff's Position**

This class action lawsuit concerns "Loot Boxes" Defendant sells in its videogames. A Loot Box is a game of chance offered within another video game, similar to a slot machine. A player uses real money to buy virtual currency from Defendant, and then uses that virtual currency – akin to poker chips – to purchase a chance on a Loot Box. Similar to a slot machine, when one hits a button to one play a Loot Box, bells and whistles sound, lights flash and anticipation grows in the hope that the player will receive something rare and highly desirable. Unfortunately, the chance of winning any of the desirable prizes is low, and often lower than permitted with legal slot machines. Consistent with California law, academic research, and the finding of government agencies around the world, Plaintiff alleges that Loot Boxes constitute gambling and violate California's strict anti-gambling laws.

As an extensive body of science published in recent years shows, Loot Boxes are a predatory form of in-game gambling designed to take advantage of children, adolescents, and adults. Playing them leads to the same problems associated with other forms of gambling, including depression, compulsive behavior, and addiction. Over the last three years, the prevalence of Loot Boxes has grown rapidly and now generates hundreds of millions of dollars annually for Defendant.

1   Meanwhile, some countries have regulated or banned Loot Boxes outright – including Loot Boxes

2   in Defendant's games – because of the gambling-related problems they cause.

3        On behalf of themselves and other similarly situated persons who paid to play a Loot Box

4   within one of Defendant's videogames, Plaintiff alleges violations of the "unlawful" and "unfair"

5   prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (the "UCL"),

6   California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 (the "CLRA"), and unjust

7   enrichment. As will be explained in Plaintiff's Opposition to Defendant's Motion to Dismiss, the

8   claims are well pled.

9        Similarly, Defendant's Motion to Compel Arbitration will fail. Defendant's arbitration

10  clause violates California law and is unenforceable. *See McGill v. Citibank N.A.*, 2 Cal. 5th 945

11  (2017). Because the arbitration clause has a non-severability clause, the entire provision is void. *See*

12  *McArdle v. AT&T Mobility LLC*, 772 Fed. Appx. 575 (9th Cir. 2019), cert. denied, *AT&T Mobility*

13  *LLC v. McArdle*, 2020 U.S. LEXIS 3018, 140 S. Ct. 2827, 207 L. Ed. 2d 159 (June 1, 2020).

14           **b.     Defendant's Position**

15       Defendant Electronic Arts Inc. ("EA") is a global leader in digital interactive entertainment.

16  EA develops and publishes games, content, and online services for gaming consoles, personal

17  computers, and mobile devices. Some of EA's video games are based on professional sports,

18  including professional football and soccer.

19       Plaintiff Kevin Ramirez ("Plaintiff") brought this putative class action against EA asserting

20  that an alleged "loot box" feature in EA's *FIFA* soccer game, *Madden NFL* football game, and EA's

21  other sports franchise games are akin to illegal slot machines and violate California gambling law.

22  As explained in EA's Motion to Dismiss (ECF No. 26), that is wrong on just about every level. EA's

23  video games are not gambling "machines or devices" under the California Penal Code, and even if

24  they were, they would be exempt because they are predominately games of skill.

25       But the Court need not address EA's Motion to Dismiss because this case does not belong

26  in court. Plaintiff affirmatively agreed to arbitrate his claims against EA on an individual basis, and

27  the Supreme Court requires the arbitration provision to be enforced as written. *See Epic Systems*

28  *Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). EA requires users to assent to its User Agreement,

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

1    which includes an arbitration provision and class action waiver, before accessing and playing its

2    games. Indeed, Plaintiff has affirmatively assented to EA's User Agreement multiple times while

3    using EA's games and online features, including specifically the games at issue in this case. The

4    arbitration provision that Plaintiff most recently agreed to applies to "[a]ll disputes, claims or

5    controversies arising out of or relating to this Agreement, any EA Service and its marketing, or the

6    relationship between you and EA . . . includ[ing] claims that accrued before you entered into this

7    Agreement." EA has therefore filed a Motion to Compel Arbitration (ECF No. 22) that the Court

8    should address and resolve before turning to the merits of EA's motion to dismiss.

9         For background, EA's *FIFA* and *Madden NFL* games offer optional "modes" of play,

10   including some modes that allow users to compete against each other in real time. One such mode

11   is "Ultimate Team Mode," in which a user can field a personalized sports team. Users who opt to

12   play in Ultimate Team Mode build their team by acquiring "Ultimate Team Packs," which include

13   virtual representations of professional players whom the user may control when competing against

14   other users in games. Ultimate Team Packs cannot be purchased using real money. Instead, a user

15   obtains a Pack using virtual currency, which can be earned through in-game performance or

16   purchased with cash. Because virtual currency may be accumulated through in-game play, a user

17   may acquire Ultimate Team Packs without spending any real money.

18        All of Plaintiff's causes of action rest on the baseless assertion that the Ultimate Team Packs

19   transform EA's video games into illegal "slot machines or devices" under Section 330b of the

20   California Penal Code. As EA explains in detail in its pending Motion to Dismiss (ECF No. 26),

21   Plaintiff's theory has been rejected by all courts to have considered it, and should be rejected by this

22   Court as well.

23        Importantly, Section 330b explicitly excludes "[p]inball and other amusement machines or

24   devices, which are predominantly games of skill." Plaintiff ignores the skilled elements of the larger

25   game. Instead, Plaintiff improperly excises one in-game feature of one mode—the Ultimate Team

26   Pack—and alleges that the feature includes an element of chance. As a court has already held in

27   rejecting an identical attempt to define a video game as an illegal slot machine under Section 330b

28   based on a "loot box" feature within the game, permitting a plaintiff to isolate one particular chance-

based aspect of a game would read the "predominantly games of skill" exception out of the statute. *See Mason v. Machine Zone, Inc.*, 140 F.Supp.3d 457, 463 (D. Md. 2015). That a single feature within a mode of the EA games (the Ultimate Team Pack) includes an element of chance does not transform the games into illegal slot machines. This flaw alone is fatal to all of Plaintiff's claims.

Even if Plaintiff's effort to avoid the "predominantly games of skill" exception was successful, the EA games would still fail to satisfy Section 330b's definition of an illegal "slot machine" for two additional reasons, each of which is also independently dispositive. ***First***, whereas Section 330b requires the operation of a physical machine or device, the EA games (and the modes and features within them) are pure software. Although the *FIFA* and *Madden NFL* games require a device to be used (as all software does), EA does not manufacture or sell any such device. Indeed, the only "devices" Plaintiff identifies in the Complaint are sold by other independent companies. Compl. ¶¶ 21, 23. A federal court has already rejected an essentially identical attempt to equate a video game publisher's software with a "device" under Section 330b(d). *See Mason*, 140 F.Supp.3d at 462-63. ***Second***, whereas Section 330b contemplates a machine or device that dispenses prizes in cash (or something that be exchanged for cash), the prize Plaintiff identifies—the virtual professional players within an Ultimate Team Pack—can only be used within the confines of the EA game in which they are acquired. Yet another federal court recently rejected the theory that virtual items obtained in a video game are the equivalent of real money or other "things of value" under Section 330b. *See Soto v. Sky Union, LLC*, 159 F.Supp.3d 871, 878-81 (N.D. Ill. 2016).

### 3.   Procedural History and Anticipated Motions

Plaintiff filed the Class Action Complaint on August 13, 2020. On October 30, 2020, Defendant moved to compel individual arbitration (ECF No. 22) and by separate motion moved to dismiss the Complaint in its entirety. (ECF No. 26). Plaintiff's Opposition is due January 14, 2021, and Defendant's reply will be filed February 11, 2020. (ECF No. 30). The motion is set to be heard on February 25, 2021.

Plaintiff anticipates filing a motion for class certification. Depending on the results of discovery, Plaintiff may also file motions for summary judgment or partial summary judgment, and may move for a preliminary or permanent injunction.

BLOOD HURST & O' REARDON, LLP

1    If the Court denies Defendant's pending motions to compel arbitration and to dismiss,

2    Defendant may file motions for summary judgment.

3    **4.   <u>Amendment to the Pleadings</u>**

4    Plaintiff anticipates filing an amended class action complaint for the purpose of adding a

5    request for actual, statutory and punitive damages under the CLRA pursuant to Civ. Code §§ 1780,

6    1782. Plaintiff and absent members of the Class reserve certain rights relating to the addition and

7    substitution of class representatives.

8    Because Defendant's motions to compel arbitration and to dismiss remain pending,

9    Defendant has yet to file an answer.

10   **5.   <u>Evidence Preservation</u>**

11   On November 11, 2020, Plaintiff sent Defendant a proposed ESI Protocol, including relating

12   to methods for searching for responsive, relevant information and the form(s) of production of

13   documents originating in hard-copy and electronic format. The Parties are in the process of meeting

14   and conferring regarding evidence preservation, including the Guidelines Relating to the Discovery

15   of Electronically Stored Information ("ESI Guidelines"), and understand their obligations to

16   preserve documents and other information.

17   Defendant has taken steps to preserve relevant evidence in this action, including issuing a

18   litigation hold notice to potential custodians of relevant documents, instructing them to preserve

19   potentially relevant documents.

20   **6.   <u>Disclosures</u>**

21   The Parties have agreed to exchange initial disclosures within fourteen (14) days of the

22   Court's resolution of Defendant's pending motions to compel arbitration and to dismiss.

23   **7.   <u>Discovery</u>**

24   **a.   <u>Discovery Taken to Date, Formal Bifurcation and Any Discovery</u>**

25   **<u>Disputes</u>**

26   The parties have not yet served their first sets of discovery. Given the organization and

27   maintenance of ESI, the parties do not believe formally bifurcating discovery will be the most

28   efficient or the least burdensome procedure in this case. Instead, the parties agree to work to

BLOOD HURST & O' REARDON, LLP

1  prioritize the production of documents given the importance of specific subsets relative to the stage

2  of litigation and the burden of production.

3      The Parties agree that responses to any discovery served in this case shall be due no earlier

4  than thirty (30) days after the Court's resolution of Defendant's pending motions to compel

5  arbitration and to dismiss.

6              **b.    Anticipated Scope of Discovery**

7                  **i.     Plaintiff's Statement**

8      Without prejudice to the ability to modify the scope of discovery, Plaintiff anticipates

9  requesting documents and communications, including electronically stored information ("ESI")

10  concerning: (1) identification of the games that contain Loot Boxes; (2) Defendant's role in

11  marketing, offering, and selling Loot Boxes, including the virtual currency used to open Loot Boxes;

12  (3) disclosure of Loot Box odds; (4) age- and content-ratings for games containing Loot Boxes;

13  (5) communications, research and analysis internally at Electronic Arts, and with game developers,

14  social science researchers, and regulators in the United States and abroad about whether Loot Boxes

15  are predatory or contain any elements of gambling; (6) third-party complaints, inquiries, and

16  communications concerning Loot Boxes, odds of winning, and content ratings and disclosures; and

17  (7) Class member transaction data relating to Loot Boxes and the virtual currency required to open

18  Loot Boxes.

19                 **ii.    Defendant's Statement**

20      As mentioned above, Defendant has filed a Motion to Compel Individual Arbitration (ECF

21  No. 22) and a Motion to Dismiss (ECF No. 26), and the Parties have agreed that neither side needs

22  to respond to any discovery requests prior to the Court's resolution of Defendant's pending motions.

23  Defendant thus believes that a discovery plan is premature. But should this action reach class and

24  merits discovery, Defendant at this time anticipates that it will need discovery into Plaintiff's in-

25  game activity, including activity relating to the acquisition of FIFA Points, FUT Coins, Madden

26  Cash, or any other virtual currency he has used when playing *FIFA* or *Madden NFL*.

27

28

BLOOD HURST & O' REARDON, LLP

**c.** **Stipulated Protective Order**

On November 11, 2020, Plaintiff provided Defendant with a draft Protective Order. The Parties will meet and confer and anticipate submitting a Protective Order for the Court's approval.

**8.** **Class Action: Proposal for how and when the Class will be certified**

Pursuant to Fed. R. Civ. P 23(b)(2) and (3), Plaintiff will seek to maintain a class action on behalf of other consumers who paid to open a Loot Box within an Electronic Arts video game. Plaintiff anticipates filing the motion for class certification shortly following his review of Defendant's hard-copy documents and ESI, and several depositions relating to such documents and discovery responses. Timing for the motion filing, which is largely contingent on the production of ESI, is proposed in the Section 16 below.

Defendant denies that this action is maintainable as a class action and anticipates opposing Plaintiff's motion.

**9.** **Related Actions**

None.

**10.** **Relief: Relief sought and description of the bases on which damages are calculated**

Plaintiff seeks damages/restitution, which includes a refund of the amounts spent to purchase and open Loot Boxes. Plaintiff will also seek punitive damages, injunctive relief and attorneys' fees, costs and expenses as permitted by applicable law.

Defendant notes that Plaintiff seeks monetary and injunctive relief in his Complaint. Defendant denies that Plaintiff is entitled to any relief.

**11.** **Settlement and ADR**

On October 30, 2020, after discussion with Defendant Plaintiff filed his ADR Certification (ECF 21). Defendant filed its ADR Certification on November 3, 2020 (ECF No. 27).

**12.** **Consent to Magistrate Judge for all Purposes**

All Parties respectfully have not consented to proceed before a magistrate judge for trial.

BLOOD HURST & O' REARDON, LLP

**13.    Other References**

Plaintiff believes this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

As Defendant explains in detail in its Motion to Compel Individual Arbitration, Plaintiff affirmatively agreed to arbitrate his claims against Defendant on an individual basis, and his claims are subject to binding arbitration.

**14.    Narrowing of Issues**

Other than as stated above, the Parties have not agreed upon any narrowing of the issues at this time. The Parties are amenable to meeting and conferring following adjudication of Defendant's Motion to Compel Individual Arbitration and Motion to Dismiss.

**15.    Expedited Schedule**

The Parties do not believe that an expedited schedule is appropriate.

**16.    Proposed Deadlines (pretrial/trial dates, dispositive motions, discovery cutoff)**

The Parties propose the following deadlines:

- **November 3, 2021:** Substantial completion of document production.
- **December 17, 2021:** Plaintiff's motion for class certification due.
- **February 11, 2022:** Defendant's opposition to class certification due.
- **March 18, 2022:** Plaintiff's reply in support of class certification due.
- **TBD:** Class certification hearing.
- **120 days after Class Certification Order:** Fact discovery deadline.
- **150 days after Class Certification Order:** Rule 26(a)(2) disclosures and exchange of expert reports.
- **180 days after Class Certification Order:** Responsive expert reports shall be exchanged.
- **240 days after Class Certification Order:** Expert discovery cut-off.
- **270 days after Class Certification Order:** Dispositive motion cut-off.

**17.    Trial**

BLOOD HURST & O' REARDON, LLP

00170599

BLOOD HURST & O'REARDON, LLP

1   Without waiving their rights, Plaintiff has demanded a jury trial. The Parties believe it is

2   premature to estimate the length of trial prior to a determination on the applicable legal issues, the

3   appropriateness of class treatment or the size and scope of any certified class.

4   **18.**   **Disclosure of Non-Party Interested Entities or Parties**

5   Plaintiff is not presently aware of any such person or entity.

6   Defendant filed its Certificate of Interested Parties on November 9, 2020 (ECF No. 31).

7   Defendant Electronic Arts Inc. is a publicly traded entity, and has no parent corporation or publicly

8   held corporation owning 10% or more of its stock.   Defendant is not aware of any non-party

9   interested entities.

10   **19.**   **Professional Conduct**

11   All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct

12   for the Northern District of California.

13   **20.**   **Such Other Matters as May Facilitate the Just, Speedy, and Inexpensive**

14   **Disposition of This Matter**

15   The Parties have no other matters to raise.

16   Respectfully submitted,

17   Dated: November 2, 2020     BLOOD HURST & O'REARDON, LLP
                                 TIMOTHY G. BLOOD (149343)
18                               THOMAS J. O'REARDON II (247952)
                                 CRAIG W. STRAUB (249032)
19

20   By:          *s/ Timothy G. Blood*
                  TIMOTHY G. BLOOD
21
     501 West Broadway, Suite 1490
22   San Diego, CA  92101
     Tel: 619/338-1100
23   619/338-1101 (fax)
     tblood@bholaw.com
24   toreardon@bholaw.com
     cstraub@bholaw.com
25
     LAW OFFICES OF ANDREW J. BROWN
26   ANDREW J. BROWN (160562)
     501 W. Broadway, Suite 1490
27   San Diego, CA  92101
     Tel: 619/501-6550
28   andrewb@thebrownlawfirm.com

     *Attorneys for Plaintiff*

Dated: November 2, 2020

KEKER, VAN NEST & PETERS LLP
R. James Slaughter (192813)
R. Adam Lauridsen (243780)
David J. Rosen (296139)

By:  ___*s/ R James Slaughter*___
R. JAMES SLAUGHTER

633 Battery Street
San Francisco, CA  94111-1801
Tel: 415/391-5400
415/397-7188 (fax)
rslaughter@keker.com
alauridsen@keker.com
drosen@keker.com
treeves@keker.com

*Attorneys for Defendant*

## ECF CERTIFICATION

The filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories to this document.

Dated: November 2, 2020

BLOOD HURST & O'REARDON, LLP

By:  ___*s/ Timothy G. Blood*___
TIMOTHY G. BLOOD

00170599

BLOOD HURST & O' REARDON, LLP

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that on November 2, 2020, I electronically filed the foregoing with the Clerk

3 of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4 addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the

5 foregoing document or paper via the United States Postal Service to the non-CM/ECF participants

6 indicated on the Electronic Mail Notice List.

7    Executed on November 2, 2020, at San Diego, California.

8

9             *s/  Timothy G. Blood*
              TIMOTHY G. BLOOD

10             BLOOD HURST & O'REARDON, LLP

11             501 West Broadway, Suite 1490
             San Diego, CA  92101

12             Tel: 619/338-1100
             619/338-1101 (fax)

13             tblood@bholaw.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O' REARDON, LLP

00170599