KEKER, VAN NEST & PETERS LLP
R. JAMES SLAUGHTER - # 192813
rslaughter@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
DAVID J. ROSEN - # 296139
drosen@keker.com
TAYLOR REEVES - # 319729
treeves@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
ELECTRONIC ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KEVIN RAMIREZ, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELECTRONIC ARTS INC.,<br><br>Defendant. | Case No. 5:20-cv-05672<br><br>**DEFENDANT ELECTRONIC ARTS INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date:     February 25, 2021<br>Time:     9:00 a.m.<br>Dept.:    Courtroom 3 – 5th Floor<br>Judge:    Hon. Beth Labson Freeman<br><br>Date Filed: August 13, 2020<br><br>Trial Date: Not Yet Assigned |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................1

    A. The parties delegated all disputes about arbitrability to the arbitrator.....................1

    B. Plaintiff does not seek public injunctive relief. ........................................................3

        1. Legal history .................................................................................................4

        2. Plaintiff's claims do not seek public injunctive relief ..................................6

        3. *McGill* applies only when a plaintiff seeks a public injunction. ..................8

III. CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ajzenman v. Office of Comm'r of Baseball*,
  2020 WL 6037140 (C.D. Cal. Sept. 14, 2020) ................................................................. 5, 8

*Arellano v. T-Mobile USA, Inc.*,
  2011 WL 1362165 (N.D. Cal. Apr. 11, 2011) ........................................................................ 9

*Bell-Sparow v. SFG Proschoicebeauty*,
  2019 WL 1201835 (N.D. Cal. March 14, 2019) .............................................................. 4, 5, 8

*Blair v. Rent-A-Center, Inc.*,
  928 F.3d 819 (9th Cir. 2019) ................................................................................................. 4

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ............................................................................................... 2

*Cooper v. Adobe Systems Inc.*,
  2019 WL 5102609 (N.D. Cal. Oct. 11, 2019) ........................................................................ 3

*Cottrell v. AT&T Inc.*,
  2020 WL 2747774 (N.D. Cal. May 27, 2020) ....................................................................... 9

*Croucier v. Credit One Bank, N.A.*,
  2018 WL 2836889 (S.D. Cal. June 11, 2018) .............................................................. 6, 8, 9

*Eiess v. USAA Fed. Sav. Bank*,
  404 F. Supp. 3d 1240 (N.D. Cal. 2019) ................................................................................. 7

*Fernandez v. Bridgecrest Credit Co., LLC*,
  2019 WL 7842449 (C.D. Cal. Oct. 29, 2019) ........................................................................ 8

*Herrera v. Wells Fargo Bank, N.A.*,
  WL 5804255 (C.D. Cal. Sept. 8, 2020) ................................................................................. 7

*Johnson v. JP Morgan Chase Bank, N.A.*,
  2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) .............................................................. 4, 5, 8

*Kilgore v. KeyBank Nat'l Ass'n*,
  718 F.3d 1052 (9th Cir. 2013) ............................................................................................... 8

*Kim v. Tinder, Inc.*,
  2018 WL 6694923 (C.D. Cal. July 12, 2018) ........................................................................ 8

*Lee v. American Express Travel Related Servs. Inc.*,
  348 F. App'x 205 (9th Cir. 2009) .......................................................................................... 9

*Lotsoff v. Wells Fargo Bank, N.A.*,
    2019 WL 4747667 (S.D. Cal. Sept. 30, 2019) ........................................................... 8, 9

*Matera v. Google Inc.*,
    2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ................................................................ 3

*McArdle v. AT&T Mobility LLC*,
    772 F. App'x 575 (9th Cir. 2019) ................................................................................. 7, 9

*Miller v. Time Warner Cable Inc.*,
    2016 WL 7471302 (C.D. Cal. Dec. 27, 2016) ................................................................. 2

*M Resorts, Ltd. v. New England Life Ins. Co.*,
    2019 WL 6840396 (S.D. Cal. Dec. 16, 2019) ............................................................. 5, 8

*McGovern v. U.S. Bank, N.A.*,
    2020 WL 4582687 (S.D. Cal. Aug. 10, 2020) ............................................................. 8, 9

*Portland Gen. Elec. Co. v. Liberty Mutual Ins. Co.*,
    862 F. 3d 981 (9th Cir. 2017) .......................................................................................... 1

*Rappley v. Portfolio Recovery Assocs.*,
    2017 WL 3835259 (C.D. Cal. Aug. 24, 2017) ............................................................. 6, 9

*Roberts v. AT&T Mobility LLC*,
    801 F. App'x 492 (9th Cir. 2020) .................................................................................... 7

*Sponheim v. Citibank, N.A.*,
    2019 WL 2498938 (C.D. Cal. June 10, 2019) ...................................................... 4, 5, 6, 8

*Taylor v. Shutterfly, Inc.*,
    2018 WL 4334770 (N.D. Cal. Sept. 11, 2018) ................................................................ 3

*Tillage v. Comcast Corp.*,
    772 F. App'x 569 (9th Cir. 2019) .................................................................................... 7

*Wright v. Sirius XM Radio*,
    2017 WL 4676580 (C.D. Cal. June 1, 2017) .......................................................... 5, 7, 8

**State Cases**

*Broughton v. Cigna Healthplans of Cal.*,
    21 Cal. 4th 1066 (Cal. 1999) ............................................................................................ 4

*Clifford v. Quest Software Inc.*,
    38 Cal. App. 5th 745 (Cal. Ct. App. 2019) ...................................................................... 4

*McGill v. Citibank, N.A.*,
    2 Cal. 5th 945 (Cal. 2017) ....................................................................................... passim

## I. INTRODUCTION

In his Opposition to Defendant Electronic Arts Inc.'s ("EA") Motion to Compel Arbitration ("Opp."), Plaintiff Kevin Ramirez ("Plaintiff") does not contest that he affirmatively agreed to EA's User Agreement *each and every time* he downloaded and installed an EA video game, including the specific games at issue in this case. Plaintiff does not contest that each version of the User Agreement to which he agreed contained an arbitration provision and class action waiver. And he does not contest that the parties agreed to delegate "gateway" issues, such as the scope and enforceability of the arbitration agreement, to the arbitrator. The Court should send Plaintiff's claims to arbitration based on these unchallenged facts alone.

Plaintiff's sole argument in opposition to EA's Motion is that the arbitration provision seeks to bar so-called "public" injunctive relief and is therefore unenforceable under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (Cal. 2017). Setting aside that the parties have agreed to send such disputes to the arbitrator, *McGill* does not apply to this case because Plaintiff is not, in fact, seeking public injunctive relief. "Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does ***not*** constitute public injunctive relief." *Id*. at 955 (emphasis added). Just so here. Plaintiff seeks to redress the alleged harms of a subset of EA customers who purchased Ultimate Team packs while playing certain EA games. Plaintiff's requested relief would not benefit or affect all EA users, much less the public at large, and the Court should reject his attempt to avoid arbitration by misconstruing the nature of the relief sought.

## II. ARGUMENT

### A. The parties delegated all disputes about arbitrability to the arbitrator.

Plaintiff agreed to arbitrate his claims against EA *multiple times* by affirmatively assenting to EA's User Agreement, which includes an arbitration provision and class action waiver. And as EA explained in its Motion, the arbitration provision's incorporation of the American Arbitration Association ("AAA") Commercial Rules constitutes clear and unmistakable evidence of the parties' intent to delegate issues of arbitrability to the arbitrator. *See Portland Gen. Elec. Co. v. Liberty Mutual Ins. Co*., 862 F. 3d 981, 985 (9th Cir. 2017) ("[P]arties may

delegate the adjudication of gateway issues to the arbitrator if they 'clearly and unmistakably' agree to do so."). Accordingly, the Court's only role here is to confirm that Plaintiff and EA entered into an arbitration agreement and then compel individual arbitration.

EA's arbitration provision states that the arbitration "shall be administered by the American Arbitration Association ('AAA') under its Commercial Arbitration Rules." Mot. at 9 (quoting EA User Agreement). Under those rules, "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the *existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim*." *Id.* (quoting AAA Commercial Arbitration Rules Section R-7) (emphasis added). As courts have repeatedly recognized, incorporation of arbitration rules delegating gateway issues of arbitrability constitutes clear and unmistakable evidence that the parties intended for the arbitrator, not the court, to decide those issues. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (holding incorporation of AAA rules constituted "clear and unmistakable" evidence of the parties' intent and noting that holding "should not be interpreted to require the contracting parties to be sophisticated or the contract to be 'commercial'"); s*ee also Miller v. Time Warner Cable Inc.*, No. 816-cv-00329 CAS (ASx) 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) ("[T]he greater weight of authority has concluded that the holding of [*Brennan*] applies similarly to non-sophisticated parties.").

Moreover, the most recent version of EA's User Agreement, effective September 8, 2020, now *explicitly* delegates the question of arbitrability to the arbitrator. *See* Declaration of Jijnes Patel in support of EA's Reply ("Patel Decl. II") Ex. A, Section 15(A) ("All disputes, claims or controversies arising out of or relating to this Agreement, any EA Service and its marketing, or the relationship between you and EA, including the validity, enforceability, and scope of this Section 15 ("Disputes"), shall be determined exclusively by binding arbitration."). That version of the Agreement is binding on Plaintiff because he continues to use EA Services. *See id.* ¶ 3. The User Agreement that Plaintiff does not contest he agreed to explicitly notifies users that EA will "modify th[e] Agreement from time to time" and "continued use of EA Services means you accept the changes." *See* "Patel Decl. I", Ex. A, Section 14. By continuing to use EA Services,

Plaintiff has consented to updates to the User Agreement, including the addition of an express delegation clause to the arbitration provision. *See Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016) (finding users of the email service agreed to updated terms of service posted on the site, when previously agreed-to terms of service notified users that updated terms would be posted and if they did not consent they should discontinue using Google's services).

Plaintiff's contention that his claims are not arbitrable because they seek public injunctive relief is a gateway dispute that must go to the arbitrator. This Court confronted this very issue in two recent decisions, *Taylor v. Shutterfly, Inc.*, No. 18-CV-00266-BLF, 2018 WL 4334770, at *3 (N.D. Cal. Sept. 11, 2018) (Freeman, J.) and *Cooper v. Adobe Systems Inc.,* No. 18-CV-06742-BLF, 2019 WL 5102609, at *6 (N.D. Cal. Oct. 11, 2019) (Freeman, J.). In both cases, plaintiffs argued that the arbitration provisions at issue were unenforceable due to purported public injunctive relief waivers. And in both cases, the Court held that pursuant to the parties' agreements, which incorporated arbitration rules delegating gateway issues, these disputes must go to the arbitrator. *Taylor*, 2018 WL 4334770 at *7 ("Requiring this Court to determine the enforceability of the Arbitration Agreement would 'invade the province of the arbitrator' who has been designated to determine the gateway issues of arbitrability."); *Cooper*, 2019 WL 510206, at *6 ("Incorporation of arbitration rules, such as the JAMS rules, constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.").

As it did in *Shutterfly* and *Cooper*, the Court should grant EA's motion to compel arbitration and allow the arbitrator to determine questions of arbitrability.

  **B.**  **Plaintiff does not seek public injunctive relief.**

If the Court determines that the Parties did not delegate arbitrability to the arbitrator, it should nonetheless send Plaintiff's claims to arbitration. Plaintiff's *post hoc* attempt to avoid arbitration by characterizing his requested relief as a "public injunction" is wrong. Plaintiff simply does not seek public injunctive relief and Plaintiff's argument regarding *McGill* and public injunctive relief is therefore beside the point.

### 1. Legal history

In *McGill*, the California Supreme Court held that an arbitration provision that waives the right to seek public injunctive relief under the UCL and CLRA in any forum is unenforceable. *See McGill* at 954-961. However, *McGill* only applies to true requests for *public* injunctive relief, not a request for a private injunction that is styled as a request for public relief. *See Johnson v. JP Morgan Chase Bank, N.A.*, No. 17-2477-JGBSPX, 2018 WL 4726042, at *7 (C.D. Cal. Sept. 18, 2018) (a "closer inspection" of plaintiffs' claims revealed they sought private, not public, relief); *Sponheim v. Citibank, N.A.*, No. 19-264-JVSADSX, 2019 WL 2498938, at *4 (C.D. Cal. June 10, 2019) ("Merely declaring that a claim seeks a public injunction, however, is not sufficient to bring that claim within the bounds of the rule set forth in *McGill*."). Because Plaintiff seeks only private relief, *McGill* does not preclude arbitration of his claims.

Public injunctive relief is "relief that 'by and large' benefits the general public." *McGill*, 2 Cal. 5th at 955; *see also Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 754 (Cal. Ct. App. 2019). "Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does **not** constitute public injunctive relief." *McGill*, 2 Cal. 5th at 955

By contrast, "[p]rivate injunctions resolve a private dispute between the parties and rectify individual wrongs, *though they may benefit the general public incidentally*." *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 824 (9th Cir. 2019) (emphasis added); *see also Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1080 n.5 (Cal. 1999) (private injunctive relief is sought where "the plaintiff is the primary beneficiary of . . . an award and the public [is] only indirectly benefited"). "Merely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for public injunctive relief." *Bell-Sparow v. SFG Proschoicebeauty*, No. 18-cv-06707-YGR, 2019 WL 1201835, at *5 n.9 (N.D. Cal. March 14, 2019).

Since the *McGill* rule was announced, courts have routinely compelled arbitration of purportedly "public injunction" claims that actually seek private relief, especially when the requested relief primarily benefits only a defendant's customers. In *Wright*, plaintiff sought an

injunction to bar defendant from cancelling certain "lifetime" subscriptions to its radio service. *Wright v. Sirius XM Radio*, No. SACV 16-01688 JVS (JCGx), 2017 WL 4676580, at *1 (C.D. Cal. June 1, 2017).  Plaintiff sought to avoid arbitration by requesting "an order enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices" and "failing to disclose or actively concealing its practice of regularly canceling and limiting or prohibiting transfers of lifetime subscriptions." *Id.* at *9.  The court held that such "vague, generalized allegations do not request public injunctive relief" because the actual relief plaintiff sought would "solely benefit the putative class members." *Id.*  Because "any benefit to the public [was] merely incidental," *McGill* did not bar enforcement of the parties' agreement to arbitrate. *Id.*

Similarly, in *Johnson*, plaintiffs sought an injunction to prevent a bank from assessing fees on certain transactions and attempted to avoid arbitration by styling their request as one for public injunctive relief. *Johnson*, 2018 WL 4726042, at *2.  However, the court held, "[w]hile Plaintiffs craft their allegations and prayer for relief to request expressly a general injunction and public injunctive relief, a closer inspection reveals that the relief sought is actually intended to redress and prevent further injury to a group of plaintiffs who have already been injured." *Id.* at *7.  Accordingly, the court compelled plaintiffs' claims to arbitration. *Id*.

And in *Bell-Sparrow*, the court compelled arbitration of plaintiff's claims that she had incurred unlawful credit card fees, despite her alleged request for public injunctive relief, noting that "vague and generalized allegations regarding the 'general public,' 'rights of the public, and the 'public interest,' do not adequately request public injunctive relief."  2019 WL 1201835, at *5 n.9; *see also Ajzenman v. Office of Comm'r of Baseball,* No. CV-20-3643, 2020 WL 6037140 (C.D. Cal. Sept. 14, 2020) (requested injunction ordering defendant to provide customers with refund information and prohibiting future denials of refund requests was not public injunctive relief because the requests "pertain[] only to a limited group of individuals" and would benefit the public, if at all, only incidentally); *M Resorts, Ltd. v. New England Life Ins. Co*., No. 19-cv-1545 WQH-AGH, 2019 WL 6840396, at *5 (S.D. Cal. Dec. 16, 2019) (request to enjoin alleged unfair business practices of life insurance company was private because it was limited to "people who have or had variable life insurance policies with Defendants"); *Sponheim*, 2019 WL 2498938, at

*1 (request to enjoin bank from practice of charging certain foreign transaction fees constituted "private" not "public" relief because "it is far from certain whether the general public would benefit from the injunction sought"); *Croucier v. Credit One Bank, N.A.*, No. 18-cv-20-MMA (JMA), 2018 WL 2836889, at *5 (S.D. Cal. June 11, 2018) (request to enjoin debt-collection practices constituted "private" rather than "public" injunction because "putative class affected by the alleged conduct would be limited to a small group of individuals similarly situated to plaintiff"); *Rappley v. Portfolio Recovery Assocs.*, LLC, No. 17-cv-00108-JGB, 2017 WL 3835259, at *6 (C.D. Cal. Aug. 24, 2017) (a "closer inspection" of plaintiff's claims "reveals that relief she seeks is intended to redress and prevent further injury" to putative class members and therefore "does not constitute public injunctive relief").

### 2.     Plaintiff's claims do not seek public injunctive relief

Plaintiff does not seek "public" injunctive relief in this dispute between EA and a subset of EA users who purchased Ultimate Team packs. Plaintiff alleges that he and other "persons who paid to receive . . . an 'Ultimate Team Pack' purchase within an Electronic Arts video game" were harmed by these purchases, and he seeks restitution for money they spent. Compl. ¶ 104; *id*. ¶ 16 ("In the course of playing FIFA and Madden NFL, and as a result of Defendant's conduct, Plaintiff Ramirez has been induced to spend money to purchase Ultimate Team Pack 'Loot Boxes' in-game."); *id*. ¶ 122 ("Plaintiff has suffered actual damage in that he paid for and downloaded games, and paid for illegal Loot Boxes and other gambling mechanisms, and subjected themselves to exploitative games as alleged herein."); *id*. ¶¶ 124, 133, 140. As the Complaint makes clear, the "primary aim" (*Sponheim*, 2019 WL 2498938, at *5) of this suit is to obtain money damages for Plaintiff and a similarly situated group of EA customers, not to obtain relief that will benefit the general public.

Plaintiff makes much of his tacked-on requests that the Court order EA "to modify its games in a manner that prevents its users from engaging in gambling" (Compl. ¶ 124) and "enjoin[] the above-described wrongful acts and practices" (Compl. ¶ 133). Like his claims for money damages, these requests for injunctive relief relate only to "a small group of individuals similarly situated to the plaintiff." *Croucier*, 2018 WL 2836889, at *5. The "primary purpose" of

the requested injunction is to remedy the alleged harms of purported class members, who are themselves only a subset of EA video game users. *Wright*, 2017 WL 4676580 at *9. The "modif[ication]" of EA games that Plaintiff seeks would only affect individuals who purchase Ultimate Team packs within EA video games. The purpose and reach of the request are fundamentally limited. In an attempt to reframe the private nature and scope of his requested relief, Plaintiff claims that the injunction would benefit "parents, other family members, and anyone else who would be affected by the fallout of gambling addiction and related problems." Opp. at 5. Not only are such benefits purely speculative and inapplicable to the general public, they are clearly "incidental" to the "primary purpose and effect" of the requested injunction, which extends only to certain EA users. *Wright*, 2017 WL 4676580 at *9. Courts have consistently held that the type of relief Plaintiff seeks does not qualify as a public injunction. *See id*. at *9–10 ("All of these requests solely benefit the putative class members. . . . Therefore, *McGill* does not prohibit enforcement of the Agreement's arbitration clause."); *see also Herrera v. Wells Fargo Bank, N.A.*, No. SACV-18-332 JVS (MRWx), 2020 WL 5804255, at *4 (C.D. Cal. Sept. 8, 2020), *reconsideration denied sub nom. Herrera v. Fargo*, No. SACV-18-00332-JVS (MRWx), 2020 WL 7051097 (C.D. Cal. Oct. 8, 2020) ("[Plaintiff] does not seek an injunction primarily benefitting the public, but instead seeks an injunction benefitting a small group of individuals similarly situated to him.").

The cases Plaintiff relies upon to argue that he seeks public injunctive relief are inapposite. In *McCardle*, *Roberts*, and *Tillage*, the parties did not dispute, and the courts did not consider, whether plaintiffs' claims actually sought public injunctive relief. *See McArdle v. AT&T Mobility LLC*, 772 F. App'x 575 (9th Cir. 2019); *Roberts v. AT&T Mobility LLC*, 801 F. App'x 492 (9th Cir. 2020); *Tillage v. Comcast Corp.*, 772 F. App'x 569 (9th Cir. 2019). And the plaintiff in *Eiess* sought an injunction requiring the defendant to alter its representations in public-facing documents about certain policies it maintained. *See Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1245 (N.D. Cal. 2019). Here, Plaintiff does not seek to enjoin any public-facing representations.

Plaintiff cannot bypass the arbitral forum he agreed to by disguising his request for private

relief as a public injunction.  *See Ajzenman*, 2020 WL 6037140 at *8 ("There is no reason, then, for Plaintiff's fashioning of purported public injunctive relief other than to escape arbitration.").

### 3. *McGill* applies only when a plaintiff seeks a public injunction.

Perhaps recognizing that his purported request for "public" relief does not withstand scrutiny, Plaintiff argues that the Court need not determine whether the relief he seeks is public or private in order to hold that *McGill* bars enforcement of the arbitration provision.  *See* Opp. at 6–7.  Plaintiff is incorrect.  As the California Supreme Court recognized, in determining whether *McGill* applies, courts must "first" look to whether the "complaint does, in fact, appear to seek the type of public injunctive relief" encompassed by the rule.  *McGill*, 2 Cal. 5th at 956.  The Ninth Circuit followed the same approach in applying the *Broughton-Cruz* rule in *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052 (9th Cir. 2013).  And courts within the Ninth Circuit routinely consider the nature of the relief sought in order to determine whether *McGill* bars enforcement of an arbitration provision.  *See, e.g., Bell-Sparrow*, 2019 WL 1201835, at *8 (N.D. Cal. Mar. 14, 2019); *Kim v. Tinder, Inc.*, No. 18-cv-03093 JFW (AS), 2018 WL 6694923, at *3–4 (C.D. Cal. July 12, 2018); *Croucier*, 2018 WL 2836889, at *4; *M Resorts, Ltd. v. New England Life Ins. Co.*, 2019 WL 6840396, at *4–5; *Sponheim*, 2019 WL 2498938, at *5; *Johnson*, 2018 WL 4726042, at *6–8; *Wright*, 2017 WL 4676582, at *9–10.  As one court recently put it in rejecting the same argument Plaintiff raises here, "[i]f Plaintiffs' logic were correct, presumably every arbitration clause that facially prohibited public injunctions would be invalid post-*McGill*, and Plaintiffs do not explain how that can be the law when *scores of cases* analyze whether the injunctive relief at issue was public or private before turning to the *McGill* rule."  *Fernandez v. Bridgecrest Credit Co., LLC*, No. EDCV 19-877-MWF-SHK, 2019 WL 7842449, at *5 (C.D. Cal. Oct. 29, 2019) (emphasis added).

Plaintiff points to no persuasive authority to the contrary.  Plaintiff cites several cases suggesting that arbitration provisions that [1] purport to waive the right to seek public injunctive relief in any forum, *and* [2] include a non-severability, poison-pill provision, require the court to find the entire arbitration provision unenforceable.  *See Lotsoff v. Wells Fargo Bank, N.A.*, 18-cv-02033, 2019 WL 4747667 (S.D. Cal. Sept. 30, 2019); *McGovern v. U.S. Bank*, N.A., 18-cv-1794,

2020 WL 4582687 (S.D. Cal. Aug. 10, 2020); *McArdle*, 772 F. App'x at 580. That line of reasoning is unpersuasive for several reasons: ***First***, the cases are unconvincing and distinguishable. The *Lotsoff* and *McGovern* courts did not acknowledge, engage with, or distinguish any of the cases cited above. *See Lotsoff,* 2019 WL 4747667; *McGovern v. U.S. Bank*, 2020 WL 4582687. As noted, the parties in *McArdle* did not contest, as they do here, that plaintiffs sought public injunctive relief. 772 F. App'x 575, 580. And the reasoning in *Cottrell* is currently being challenged in the Ninth Circuit. *Cottrell v. AT&T Inc.*, No. 19-cv-07672-JCS, 2020 WL 2747774 (N.D. Cal. May 27, 2020) (appeal filed June 15, 2020).

***Second***, the inclusion of a non-severability provision in the arbitration agreement does not change the Court's analysis or eliminate the need to decide whether Plaintiff's request is truly "public" under *McGill*. *See Rappley v. Portfolio Recovery Assocs.*, LLC, No. 17-cv-00108-JGB, 2017 WL 3835259, at *6 (C.D. Cal. Aug. 24, 2017) (holding lack of a request for public injunctive relief avoided any *McGill* issue despite non-severability clause in arbitration provision). The provision only applies "[i]f th[e] specific subsection [that Plaintiff challenges] is found to be unenforceable." Patel Decl. I, Ex. A Section 15(D). There is no basis to find the provision unenforceable under *McGill* unless the rule in that case is triggered *by a request for a public injunction*. *See Croucier*, 2018 WL 2836889, at *3 (concluding that the court "does not reach" plaintiff's arguments regarding the agreement's non-severability clause "because it [found] *McGill* inapplicable" since plaintiff did not seek public injunctive relief). To the extent Plaintiff seeks to challenge the alleged public injunction waiver on its face, he does not have standing to challenge a purportedly unlawful contractual term that does not apply to him. *See Lee v. American Express Travel Related Servs. Inc.*, 348 F. App'x 205, 206 (9th Cir. 2009) (holding plaintiffs lacked standing to sue defendants for class-action waiver and other "allegedly unconscionable" provisions because they had not brought any claims to which the provisions might apply); *see also Arellano v. T-Mobile USA, Inc.*, No. C 10-05663 WHA, 2011 WL 1362165, at *5 (N.D. Cal. Apr. 11, 2011) ("Plaintiff does not have standing to challenge the change-in-terms provision, because it has never been applied to her."). Accordingly, the first step in the Court's analysis must be to determine whether Plaintiff seeks public injunctive relief. For

the reasons set forth above, he does not seek such relief, and the Court must compel individual arbitration of his claims.

***Third***, and finally, even if the inclusion of the severability provision impacted the analysis, the most recent version of the User Agreement separates that clause from the purported public injunctive relief waiver.  *See* Patel Decl., Ex. A, Sections 15(C)(4), (D).  Therefore, the version of the Agreement that binds Plaintiff contains no so-called "poison pill" clause related to the provision regarding public injunctive relief, and to the extent that provision is unenforceable, it can be severed from the rest of the Agreement pursuant to Section 15(H) ("If any clause within this Section 15 (other than the Class Action Waiver clause set forth in paragraph D above) is found to be unenforceable, that clause will be severed from this Section 15 and the remainder of this Section 15 will remain in full force and effect").  *Id*., Ex. A, Section 15(H).  With that provision severed, the Court could and should then order Plaintiff's claims to individual arbitration since Plaintiff does not, in fact, seek public injunctive relief.

### III.   CONCLUSION

For the foregoing reasons, EA respectfully requests that the Court compel individual arbitration of Plaintiff's claims and dismiss this case.

Dated:  February 11, 2021

KEKER, VAN NEST & PETERS LLP

By:  */s/ R. James Slaughter*
R. JAMES SLAUGHTER
R. ADAM LAURIDSEN
DAVID J. ROSEN
TAYLOR REEVES

Attorneys for Defendant
ELECTRONIC ARTS INC.