KEKER, VAN NEST & PETERS LLP
R. JAMES SLAUGHTER - # 192813
rslaughter@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
DAVID J. ROSEN - # 296139
drosen@keker.com
TAYLOR REEVES - # 319729
treeves@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
ELECTRONIC ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KEVIN RAMIREZ, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELECTRONIC ARTS INC.,<br><br>Defendant. | Case No. 5:20-cv-05672<br><br>**DEFENDANT ELECTRONIC ARTS INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>Date:           February 25, 2021<br>Time:          9:00 a.m.<br>Dept.:         Courtroom 3 – 5th Floor<br>Judge:        Hon. Beth Labson Freeman<br><br>Date Filed:  August 13, 2020<br><br>Trial Date:  Not Yet Assigned |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT........................................................................................................................2

    A. An Ultimate Team Pack is not a "Slot Machine or Device" Under California Law ...................................................................................................2

        1. The EA games Plaintiff allegedly played are predominantly games of skill ...................................................................................................2

        2. An Ultimate Team Pack is not a "machine, apparatus, or device" ..............5

        3. The virtual content of an Ultimate Team Pack is not a "thing of value" ..................................................................................................6

    B. Plaintiff's UCL and CLRA Claims Are Fatally Deficient........................................9

        1. Plaintiff lacks standing to bring his claims because he has not plead any economic injury.......................................................................9

        2. Plaintiff fails to state a claim under the "unlawful" prong of the UCL.........................................................................................................11

        3. Plaintiff fails to state a claim under the "unfair" prong of the UCL..........12

        4. Plaintiff does not allege any transactions for "goods" or "services" under the CLRA ...................................................................................13

    C. Plaintiff's Unjust Enrichment Claim Fails.............................................................14

III. CONCLUSION..................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Chaset v. Fleer/Skybox Int'l., LP*,
  300 F.3d 1083 (9th Cir. 2002) ............................................................................................. 11

*Coffee et al. v. Google, LLC*,
  Case No. 20-cv-03901-BLF, ECF No. 56 (N.D. Cal. Feb. 10, 2021) ............................ 10, 14

*Fed. Trade Commn. v. R.F. Keppel & Bro.*,
  291 U.S. 304 (1934) .............................................................................................................. 13

*Hawkins v. Kroger Co.*,
  906 F.3d 763 (9th Cir. 2018) ................................................................................................. 9

*In re iPhone Application Litig.*,
  844 F.Supp.2d 1040 (N.D. Cal. 2012) ................................................................................. 14

*Kater v. Churchill Downs Inc.*,
  886 F.3d 784 (9th Cir. 2018) ........................................................................................ 6, 7, 8

*LVRC Holdings LLC v. Brekka*,
  581 F.3d 1127 (9th Cir. 2009) ........................................................................................... 1, 2

*Mason v. Mach. Zone, Inc.*,
  140 F. Supp. 3d 457 (D. Md. 2015) ......................................................................... 3, 4, 5, 9

*Price v. Pinnacle Brands, Inc.*
  138 F.3d 602 (5th Cir. 1998) ............................................................................................... 11

*Soto v. Sky Union LLC*,
  159 F. Supp. 3d 871 (N.D. Ill. 2016) ................................................................................. 6, 7

*West v. Palo Alto Hous. Corp.*,
  2019 WL 2549218 (N.D. Cal. June 20, 2019) ..................................................................... 12

*Wilson v. Hewlett–Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ............................................................................................. 12

**State Cases**

*Bell Gardens Bicycle Club v. Department of Justice*,
  36 Cal. App. 4th 717 (1995) ................................................................................................... 4

*Fairbanks v. Super. Ct.*,
  46 Cal. 4th 56 (2009) ............................................................................................................ 13

*Finster v. Keller*,
  18 Cal. App. 3d 836 (1971) ................................................................................................4

*Hansen v. Newegg.com Americas, Inc.*,
  25 Cal. App. 5th 714 (2018) ..............................................................................................10

*Kwikset Corp. v. Superior Court*,
  51 Cal.4th 310 (2011) .............................................................................................9, 10, 11

*Trinkle v. Cal. State Lottery*,
  105 Cal. App. 4th 1401 (2003) ............................................................................................2

**Federal Statutes**

FTC Act § 5 ...........................................................................................................................13

**State Statutes**

Cal. Civ. Code § 1761(b) ......................................................................................................14

Cal. Pen. Code § 330.2..........................................................................................................6

Cal. Penal Code § 330b(f)..............................................................................................1, 2, 3

Cal. Penal Code § 330b..............................................................................................1, 3, 7, 8

Cal. Penal Code § 330b(d) ........................................................................................... *passim*

## I. INTRODUCTION

Defendant Electronic Arts Inc.'s ("EA") *Madden NFL* and *FIFA* sports-simulation games are not slot machines. Nevertheless, Plaintiff seeks to create new criminal liability for a feature of EA's video games by expanding the reach of a California statute that criminalizes the use, manufacture, and sale of traditional slot machines. California Penal Code Section 330b specifically defines the scope of and exclusions from its potential criminal liability. It requires a [1] "machine, apparatus, or device" whose users [2] "become entitled to receive a thing of value" [3] "by reason of the chance operation of the machine." *Id.* § 330b(d). And it specifically excludes "[p]inball and other amusement machines or devices, *which are predominantly games of skill*." Cal. Penal Code § 330b(f) (emphasis added). Plaintiff's allegations do not meet *any* of these requirements of the statute: EA games are predominantly games of skill, existing exclusively as software (not a machine or device), and users never become entitled to "a thing of value" through game play.

But even if the Court does not resolve at this stage whether EA's games run afoul of Section 330b, Plaintiff's claims are doomed as a matter of law for other independent reasons. Plaintiff fails to allege an economic injury connected to those alleged violations, as he must to establish statutory standing for both his UCL and CLRA claims. Plaintiff asserts that EA violates the UCL through alleged omissions, but fails to explain why EA had an affirmative duty to make the statements that Plaintiff demands. Plaintiff asserts violations of CLRA, but fails to allege a transaction concerning "goods" or "services."

Ultimately, Plaintiff apparently has a policy difference with the California legislature and now invites this Court to extend Section 330b in a way entirely inconsistent with the statute and unsupported by any case law. The Court should decline that invitation. Although Plaintiff is wielding the statute in a civil context, this Court's interpretation "is equally applicable in the criminal context." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (citing *Leocal v. Ashcroft,* 543 U.S. 1, 11 n. 8 (2004)). And, as the Ninth Circuit has emphasized, "the Supreme Court has long warned against interpreting criminal statutes in surprising and novel ways that impose unexpected burdens on defendants." *Id.* at 1134. Therefore, "[i]t is well

established that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Id.* (quoting *United States v. Carr,* 513 F.3d 1164, 1168 (9th Cir. 2008)).

The Court should reject Plaintiff's invitation to make new law, and grant EA's motion to dismiss.

## II.     ARGUMENT

### A.     An Ultimate Team Pack is not a "Slot Machine or Device" Under California Law

California Penal Code section 330b(d) provides a specific multi-part definition of what does (and does not) constitute a "slot machine or device" for gambling purposes. To run afoul of the statute, Plaintiff must allege (1) that EA provides "a machine, apparatus, or device activated "by the insertion of money or [some] other object"; (2) that the operation of EA's "machine" is "unpredictable and governed by chance"; and (3) that "by reason of the chance operation of the machine, the user may become entitled to receive a thing of value." *Trinkle v. Cal. State Lottery*, 105 Cal. App. 4th 1401, 1409 (2003). A failure to satisfy any one of these requirements would defeat Plaintiff's claims. As explained below, Plaintiff satisfies none of them. Neither the statutory language of California's criminal code nor the case law interpreting it supports Plaintiff's novel attempt to stretch California's criminal law to cover a single optional feature within EA's sports-simulation video games.

#### 1.     The EA games Plaintiff allegedly played are predominantly games of skill

In addition to Section 330b(d)'s requirement that a gambling machine be "unpredictable and governed by chance," Section 330b(f) specifically excludes from regulation games that "are predominantly games of skill," such as pinball and other amusement devices. Plaintiff does not dispute that *FIFA* and *Madden NFL* are primarily games of skill—sports-simulations dependent on gamers' real-time control of their teams. *See* ECF 26 (Defendant's Motion to Dismiss)

("Mot.") at 8.[1]  And Plaintiff himself alleges that Ultimate Team Packs "are purchased to create a team of highly-rated players in the 'Ultimate Team' mode of game play, in order to compete against other gamers online."  Compl. ¶ 31. When gamers choose to play the Ultimate Team mode (an optional feature), there is no dispute that any Ultimate Team Packs they may have purchased are used as part of a game of skill.  Mot. at 8.  Nonetheless, Plaintiff maintains that a single aspect of EA's video games' operation—the process by which player items are acquired as part of Ultimate Team Packs—should be carved out from the games in which the items are used.  Plaintiff's attempt to analyze that feature in isolation from the games fails as a matter of law and should be rejected.

Plaintiff's interpretation of Section 330b erases the "predominately game of skill" exception from the statute.  See *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 463 (D. Md. 2015).  If one can classify a feature of a larger game as a "slot machine" by isolating it from the game of skill in which the feature is used, then the statutory exception is meaningless.  Under Plaintiff's approach, any aspect of randomness within a larger game of skill could render that game a gambling device under the California Penal Code.  The California Legislature sought to avoid this result when it specified that "pinball and other amusement machines or devices, which are predominantly games of skill" do not fall within the scope of prohibited gambling "whether affording the opportunity of additional chances of free play or not."  Cal. Penal Code § 330b(f). The only court to date to apply the subsection (f) exclusion to video games held that a feature more closely resembling gambling than the one at issue here—literally a "casino function"—did not transform a larger video game into illegal gambling.  *Mason*, 140 F. Supp. 3d at 463 ("Plaintiff invites the Court to read the subsection (f) exclusion out of the statute.  The Court

---

[1] As explained in EA's opening brief, Plaintiff's own allegations are more than sufficient to establish that *FIFA* and *Madden* are predominantly games of skill.  Should the Court wish to review the content of the games, it may do so because the games at issue are properly the subject of judicial notice and before the Court.  See ECF 26-1 (EA's Request for Judicial Notice).  The content of these games is not disputed and EA's request for judicial notice is unopposed.

declines Plaintiff's invitation."). Plaintiff makes no effort to distinguish the feature at issue here from the one found permissible in *Mason*; he simply asserts that *Mason* was wrongly decided. *See* Opp. at 11-12.

Instead of addressing *Mason* head-on, Plaintiff relies on *Bell Gardens Bicycle Club v. Department of Justice*, 36 Cal. App. 4th 717 (1995), where the court found that an alleged illegal lottery game could be classified separately from a skilled poker game that was played in the same card room. But the court so found because the poker game and the lottery game were "completely severable." *Id.* at 743. Here, there is no allegation that the Ultimate Team Packs and the underlying games are severable; on the contrary, the virtual players obtained in the Ultimate Team Packs can only be used in the game for which the player acquired them. Much like a free play in pinball can only be used in the context of the pinball game, a player in an Ultimate Team Pack can only be used in the context of *Madden NFL* or *FIFA* in Ultimate Team Mode. The Ultimate Team Packs and the video games in which they are used are not severable.

Likewise, Plaintiff's attempt to analogize this case to *Finster v. Keller*, 18 Cal. App. 3d 836 (1971), is easily dismissed. In *Finster*, the court considered a different legal issue: whether a bet that involves picking various combinations of horse-racing winners was an illegal lottery. *Id.* at 842. Even on that distinct issue, the court held that "[t]he test is not whether the game contains an element of chance or an element of skill, but which of them is the dominating factor in determining the result of the game." *Id.* at 844. The *Finster* court, unremarkably, found that the derivative horse-racing bet at issue was predominantly a matter of chance. *Id.* at 845. EA's video games are not bets at the horse track. As explained above, *Madden NFL* and *FIFA*—even with certain features that involve randomness—are predominantly games of skill, and thus not illegal gambling under Section 330.[2]

---

[2] Plaintiff invites the Court, without analysis, to rely upon a recent decision by the Hague. Opp. 13. That decision does not apply California law and concerns an entirely separate regulatory regime. The Court should not substitute EU regulations for the California Penal Code.

**2.     An Ultimate Team Pack is not a "machine, apparatus, or device"**

The California Penal Code defines a slot machine as a "machine, apparatus, or device." Cal. Penal Code § 330b(d). Plaintiff, however, does not allege he used any machines, apparatuses, or devices manufactured or sold by EA. Rather, Plaintiff's claims involve only EA's software. *See* Compl. ¶ 93. No court has ever held that software standing alone constitutes a "machine, apparatus, or device" for purposes of Section 330b(d), and Plaintiff's Opposition is unsurprisingly bereft of citation to any such authority. *See* Opp. 17-18. On that basis alone, Plaintiff's claims fail as a matter of law.

Applying the plain meaning of the relevant terms, an Ultimate Team Pack—a digital item consisting of virtual professional sports players—is not a machine, apparatus, or device. *See*, *e.g.*, Black's Law Dictionary (11th ed. 2019) (defining "device" as a "mechanical invention" that may be "an apparatus or an article of manufacture" and "machine" as a "device or apparatus consisting of fixed or moving parts that work together to perform some function"). Plaintiff attempts to evade this language by effectively drafting a new statute. If software "can only function as intended on a physical machine," Plaintiff reasons, then the software itself should be considered a physical machine under Section 330b(d). *See* Opp. 17. No court has ever endorsed such a strained reading of the California Penal Code, and adopting it on attorney say-so would have significant implications for the scope and definiteness of California criminal law.

Plaintiff faults EA for citing the one (and only) case in which a party argued the same erroneous reading of "machine, apparatus, or device" that Plaintiff advances here. *See* Opp. 18. In *Mason*, the court rejected the plaintiff's argument that a virtual "casino function" in an online game could be a "machine, apparatus, or device" within the meaning of Section 330b(d) of the California Penal Code. *See Mason*, 140 F.Supp.3d at 462–63. The court explained that "[t]he most natural reading of the phrase 'machine, apparatus, or device' calls to mind a piece of equipment." *Id.* Plaintiff does not explain why the *Mason* court's natural reading of the statutory language is wrong. Instead, Plaintiff characterizes the *Mason* decision as "rejected," although no court has subsequently disagreed with or declined to follow *Mason*'s interpretation of Section 330b(d) of the California Penal Code. Plaintiff also notes that *Mason* predates the Ninth Circuit's

decision in *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018), but that decision concerned Washington law, not California law. Moreover, *Kater* did not consider or address the question of whether the Washington gambling statute at issue had a "physical machine" requirement.

In short, Plaintiff cites no authority for the proposition that a defendant's software feature is a "machine, apparatus or device" under Section 330b(d) so long as the software is "intended to function" on a different party's physical machine.

### 3. The virtual content of an Ultimate Team Pack is not a "thing of value"

The California Penal Code defines "thing of value" as "any money, coin, currency, check, chip, allowance, token, credit, merchandise, property, or any representative of value." Cal. Pen. Code § 330.2. Plaintiff's theory is that "any representative of value" encompasses literally anything that someone may value—virtual, "hedonic," or otherwise. This boundless reading renders the relevant statutory limitation meaningless and runs afoul of statutory interpretation rules. Because anything could be a "thing of value" under Plaintiff's interpretation of the term, he functionally reads the restriction (meant to narrow what constitutes gambling) out of the statute. And under a basic rule of statutory interpretation, the general term should be read in the context of the more specific ones that precede it. *See* Mot. at 12. Applying that rule, whatever subjective enjoyment a game user may obtain from receiving a desirable card in an Ultimate Team Pack does not rise to the level of a "thing of value" for gambling purposes, just as the law recognizes that purchasers do not gamble when they buy packs of baseball cards with hopes of landing a star player. *See* Mot. at 12–13.

The only court to address a similar issue under California law recognized that "[a]dded enjoyment simply does not have measurable worth, and it cannot be a 'thing of value' under section 330b(d)." *Soto v. Sky Union LLC*, 159 F. Supp. 3d 871, 880 (N.D. Ill. 2016). Plaintiff does not distinguish the features found permissible in *Soto* from the Ultimate Team Packs at issue here—both involve the acquisition, with some degree of randomness, of virtual elements that may add to user's enjoyment of their respective games—and merely argues that *Soto* was wrongly decided. Opp. at 16 (characterizing the decision as "[d]isplaying a lack of understanding about

videogames and their prizes" and arguing that "the court incorrectly described the prizes as 'imaginary'"). For the reasons above and as explained in EA's opening brief, the *Soto* court properly held that virtual items providing video game users added enjoyment are not "things of value" sufficient to convert the games into illegal gambling. *See* Mot. at 11–12.

While Plaintiff dismissed *Soto* as wrongly decided, he cites no authority for his boundless conception of "thing of value." Instead, Plaintiff points out—as EA already acknowledged in its motion to dismiss—that a reward of free games (that would otherwise have to be paid for with cash) may qualify as a "thing of value" under Section 330b(d). Opp. 14 (citing *Merandette v. City & Cty. of S.F.*, 88 Cal. App. 3d 105, 114 (1979)). Plaintiff also observes that the Ninth Circuit, interpreting a different gambling statute from another state,, concluded that a free play could be a thing of value. *Kater*, 886 F.3d at 785–86.

Plaintiff, however, never explains what the "reward of free games in lieu of paying cash" has to do with the Ultimate Team Packs that it alleges are illegal slot machines. The Ultimate Team Packs are not credits. They do not extend game play. And they certainly cannot be used to extend game play in lieu of cash. *See Soto*, 159 F.Supp.3d at 878–81. Plaintiff's complaint includes no allegations to the contrary, nor could it.

Plaintiff also argues that the "thing of value" prong is satisfied by the alleged existence of a black market created by third parties in which virtual items are bought and sold for real money. But according to the EA User Agreement, users agree not to "[s]ell, buy, trade or otherwise transfer or offer to transfer your EA Account, any personal access to EA Services, or any EA Content associated with your EA Account, including EA Virtual Currency and other Entitlements, either within an EA Service or on a third party website, or in connection with any out-of-game transaction, unless expressly authorized by EA." ECF 26-5 (Exh. D to Defendant's Request for Judicial Notice) § 6. The virtual items in Ultimate Team Packs cannot constitute a "thing of value" under Section 330b based on a prohibited use. *See Soto*, 159 F.Supp.3d at 881.

In *Kater*—the case upon which Plaintiff heavily relies despite the fact that it concerns substantively distinct Washington state law instead of California law—the Ninth Circuit expressly rejected the "black market" theory of value:

> [Plaintiff] argues that the chips are a "thing of value" because users can sell them for money on the "black market." However, Big Fish Casino's Terms of Use prohibit the transfer or sale of virtual chips. As a result, the sale of virtual chips for cash on a secondary market violates the Terms of Use. The virtual chips cannot constitute a "thing of value" based on this prohibited use.

*Kater*, 886 F.3d at 788 n.2 (9th Cir. 2018) (citing *Mason v. Mach. Zone, Inc.*, 851 F.3d 315, 320 n.3 (4th Cir. 2017)).

Finally, unable to rely on allegations in the Complaint to show that an Ultimate Team Pack satisfies the statutory definition of a "thing of value," Plaintiff resorts to unplead facts concerning an "Auction House" feature in the Madden NFL Mobile game. Opp. 16. The Auction House feature allows users to acquire and trade NFL players obtained from Ultimate Team Packs. *Id*. The Complaint contains no allegations about the Auction House feature in the Madden NFL Mobile game. Plaintiff does not even allege that he played the Madden NFL Mobile game, let alone use its Auction House.

In any event, Plaintiff fundamentally misdescribes how the Auction House feature works. For example, Plaintiff asserts that the "[t]he currency used is 'points,' which are purchased with real money." Opp. 16. But as the cited video shows, the currency used in the Auction House is Coins, which cannot be purchased with real money. *Id*. at 16 n.2 (citing https://www.ea.com/games/madden-nfl/madden-nfl-21-mobile/tips-and-tricks/madden-mobile-21-auction-house). Coins can be acquired only through game play. Furthermore, Plaintiff absurdly concludes—based on the fact that there is a "10% auction house fee" applied to all transactions in the auction house—that EA is making a monetary profit off those transactions. Opp. 16. But the "auction house fee" is deducted from virtual coins that cannot be bought with (or exchanged for) real money. EA earns no revenue from the virtual fee.

In short, Plaintiff alleges only that users of EA's game may receive enjoyment from opening Ultimate Team Packs, but that enjoyment does not constitute a "thing of value" under Section 330b as a matter of law. Thus, even if EA's sports-simulation video games were not predominantly games of skill (they are) and even if they were held to be a "machine, apparatus or device" (they are not), they still do not fall within Section 330b's scope because they do not

deliver users a recognized "thing of value."

### B. Plaintiff's UCL and CLRA Claims Are Fatally Deficient

#### 1. Plaintiff lacks standing to bring his claims because he has not plead any economic injury

Plaintiff admits he lacks standing to bring his claims unless he alleges an economic injury resulting from an unlawful or unfair business practice. *See* Opp. 6; *see also Hawkins v. Kroger Co.*, 906 F.3d 763, 768 (9th Cir. 2018) ("A plaintiff is required to show some form of economic injury as a result of his transactions with the defendant."); *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322 (2011) (establishing standing under UCL requires showing "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury"). Plaintiff's novel theory is that he can establish economic injury through his loss of *virtual* points spent on *virtual* items for use in a video game. No court—at any level—has recognized such loss as an economic injury sufficient to confer standing under the UCL or CLRA.

Plaintiff's theory of standing was squarely rejected by the only court to consider it. As EA detailed in its Motion to Dismiss, the court in *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457 (D. Md. 2015) found that the plaintiff did not have standing under the UCL to bring a claim related to her alleged losses incurred while playing a mobile video game. The plaintiff in *Mason* wagered "virtual gold" that she had acquired in exchange for real money in an online store. "At the moment of that antecedent transaction," the court explained, "Plaintiff's 'loss,' if any, was complete: then and there she had swapped something of value (real money) for something of whimsy (pretend 'gold')." *Id.* at 465.

The court in *Mason* applied the same California statutes to the same theory of liability Plaintiff alleges here. Nonetheless, Plaintiff urges this Court to disregard *Mason* because the complaint at issue there concerned, in the court's words, "a hodgepodge of hollow claims." *See* Opp. 8. The *Mason* court would have ruled differently, Plaintiff suggests, had the complaint included "allegations of peer-reviewed research and regulatory studies." *Id.* Plaintiff misreads *Mason*. The court there disparaged the claims not because the complaint failed to include citations to proposed regulatory reforms and academic articles, but rather because the plaintiff

9

failed to allege the specific economic injury that the statutes at issue require. The same is true of Plaintiff's allegations here.

Plaintiff generally alleges that he spent real money in connection with his play of *FIFA* in June 2020. Plaintiff does not allege—because he could not—that he spent money to directly purchase Ultimate Team Packs. As the Complaint makes clear and Plaintiff does not dispute, those packs can only be purchased with *virtual* currency—FUT Coins or FIFA Points. *See* Compl. ¶ 37. Plaintiff asserts that there is a "requirement that Points be purchased and then used to buy Loot Boxes." Opp. 8. That statement is false, as other allegations in Plaintiff's complaint show. First, a user does not have to acquire Ultimate Team Packs to play *FIFA*, *Madden NFL*, or any other EA game. Second, even if a user chooses to acquire an Ultimate Team Pack, there is no requirement to use Points to do so. The packs can also be acquired with Coins, which are earned through game play. Compl. ¶¶ 36–37.

Moreover, Plaintiff cites no authority for the proposition that virtual play money "spent" within the confines of a game qualifies as an economic loss or injury. In every case Plaintiff cites in support of his argument that he has standing to bring his claims, the plaintiffs spent real money directly on the items that gave rise to their UCL or CLRA claims. *See Kwikset*, 51 Cal. 4th at 325–28 (plaintiffs paid for locksets that were deceptively labeled); *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 720 (2018) (plaintiffs paid for computer components that were deceptively priced). Here, Plaintiff affirmatively concedes that he has no issue with the transactions in which he may have spent real money. *See* Opp. 7–8 (Plaintiff "does not take issue with the dollars for FIFA Points (or FUT coins) conversion.").[3] Because Plaintiff got what he allegedly paid for—virtual currency good for a variety of uses in EA's games—he lacks standing for his UCL or CLRA claims. *See Coffee et al. v. Google, LLC*, Case No. 20-cv-03901-BLF, ECF No. 56 at 16–17 (N.D. Cal. Feb. 10, 2021).

---

[3] Plaintiff attempts to analogize EA's virtual currency to casino chips, but while chips may be converted back to money at a holder's request, a purchaser of EA's virtual currency cannot convert FIFA Points or FUT Coins back into real money.

The fact that Plaintiff may have been disappointed when he spent virtual currency within EA's games does not give rise to a UCL or CLRA claim.  Plaintiff fails to distinguish the line of cases in which courts have found no injury to property—and thus no standing under the analogous standard used for RICO claims—based on a buyer's disappointment upon finding that a pack of baseball cards did not contain the special player that the buyer coveted.  *See, e.g., Chaset v. Fleer/Skybox Int'l., LP*, 300 F.3d 1083, 1087 (9th Cir. 2002); *Price v. Pinnacle Brands, Inc.* 138 F.3d 602, 607 (5th Cir. 1998).  Although RICO and the UCL/CLRA have similar statutory standing requirements, Plaintiff attempts to distinguish the RICO cases by noting that California's Unfair Competition Law purportedly does not require a showing of economic loss to establish standing.  Opp. 9 (citing *Major League Baseball Props., Inc. v. Price*, 105 F. Supp. 2d 46, 53 (E.D.N.Y. 2000); *Dumas v. Major League Baseball Props., Inc.*, 104 F. Supp. 2d 1220, 1222-23 (S.D. Cal. 2000)).  But the cases Plaintiff cites were decided 20 years ago, several years before the voters of California added the standing requirement to the UCL via the passage of Proposition 64.  *See Kwikset*, 51 Cal. 4th at 322–23.  The UCL, like RICO, now requires economic loss to establish standing.

In addition to emphasizing a distinction between the UCL and RICO that no longer exists, Plaintiff stresses that he is challenging "an illegal gambling device," not baseball cards.  *See* Opp. 10.  True, but the Ultimate Team Pack element Plaintiff challenges—the random assignment of potentially more desirable cards within a pack—is indistinguishable from practices that have long been recognized as legal in other contexts, such as with baseball cards packs.  In any event, even if Ultimate Team Packs are held to be gambling under Section 330 (they are not), Plaintiff's statutory claims fail because he has not alleged economic loss connected to his acquisition of Ultimate Team Packs.

> **2.      Plaintiff fails to state a claim under the "unlawful" prong of the UCL**

Plaintiff attempts to establish a claim under UCL's unlawful prong by borrowing

violations from other laws.[4]  All those violations depend on the premise that EA's Ultimate Team Packs are illegal gambling devices.  Because the Ultimate Team Packs are not illegal gambling devices, Plaintiff cannot maintain a claim under the "unlawful" prong of the UCL.

Plaintiff suggests that he has a claim under the UCL unlawful prong via the CLRA and "California's deceit laws."  *See* Opp. 19.  Plaintiff does not identify any affirmative statements EA made that were false, misleading, or deceitful.  Instead, Plaintiff points to screen shots from EA's mobile games, complaining that the "only disclosure is the vague and generic statement a game has 'In-App Purchases.'"  Compl. ¶ 82.  But that statement is undeniably true: those games contain the option for in-app purchases."

Plaintiff also suggests that EA's labeling was false and misleading by omission.  *See* Opp. 19–20.  But alleged omissions can sustain Plaintiff's claims only if EA had a duty to disclose the allegedly omitted statement.  *See Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).  Plaintiff fails to establish such a duty here.  Plaintiff's theory appears to be that EA had a duty to identify the Ultimate Team Packs as "illegal gambling" even though there is no statute that regulates such Packs (or "loot boxes") as gambling, and even though no court has ever interpreted California's gambling laws to cover so-called loot boxes.  On the contrary, as EA has discussed, the only courts to address the theory Plaintiff raises here have held that these in-game purchases of virtual items are ***not*** illegal gambling.  There is no authority for the disclosure duty that Plaintiff seeks to invent.

        **3.**        **Plaintiff fails to state a claim under the "unfair" prong of the UCL**

Plaintiff's allegations that EA violated the "unfair" prong of the UCL are derivate of the allegations that EA violated the "unlawful" prong.  Accordingly, "[b]ecause Plaintiff's unlawful prong claim cannot survive, Plaintiff's unfair prong also must fail."  *West v. Palo Alto Hous.*

---

[4] Plaintiff asserts that EA concedes that Plaintiff's CLRA claim is a valid predicate for Plaintiff's UCL "unlawful prong" claim.  Opp. 18-19.  That is not true, as Plaintiff acknowledges four pages later: "EA argues Plaintiff's CLRA claim fails as an independent cause of action and as a predicate violation for the UCL's unlawful prong."  Op. 23.

*Corp.*, No. 17-CV-00238-LHK, 2019 WL 2549218, at *26 (N.D. Cal. June 20, 2019).

Plaintiff insists that the unfair prong does not require a statutory violation. While that may be true in certain contexts, in this case, all of Plaintiff's allegations under the unfair prong reduce down to the question of whether EA's Ultimate Team Packs are "gambling" under California law. *See* Opp. 21 (listing statutes requiring the regulation and licensing of "gambling enterprises" and "gambling operations").[5] If this Court correctly finds that the Ultimate Team Packs are not illegal slot machines under the California Penal Code, then Plaintiff's claim necessarily fails under both prongs of the UCL.

Plaintiff also alleges—for the first time—that EA's conduct is unfair because it violates the FTC Act. Opp. 22. Plaintiff did not allege a violation of the FTC Act in the Complaint. But even if he had, it would not save his UCL claim. Plaintiff cites an 86-year-old case in which the Supreme Court upheld the FTC's authority to determine that certain practices of selling candy and prizes to children were prohibited by Section 5 of the FTC Act. *Fed. Trade Commn. v. R.F. Keppel & Bro.*, 291 U.S. 304, 306-08 (1934). The FTC has not, however, determined that so-called "loot boxes" violate Section 5 (or any other section) of the Act. If Plaintiff believes that the FTC should make that determination, he should direct his concerns to the FTC, not this Court.

### 4. Plaintiff does not allege any transactions for "goods" or "services" under the CLRA

The CLRA "applies only to transactions for the sale or lease of consumer 'goods' or 'services' as those terms are defined in the act." *Fairbanks v. Super. Ct.*, 46 Cal. 4th 56, 65 (2009). Plaintiff does not dispute the point that digital items like Ultimate Team Packs are not "tangible chattels" and thus cannot be "goods" under the CLRA. *See* Mot. at 18–19.

Plaintiff now argues, however, that his alleged transactions concern "services," not goods. The CLRA defines "services" as "work, labor, and services for other than a commercial or

---

[5] Plaintiff states that EA "asserts that certain places have not yet passed legislation specifically prohibiting all Loot Boxes." Opp. 22:7–8. EA said no such thing. Indeed, the page and footnote numbers Plaintiff cites do not exist in EA's Motion to Dismiss.

business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b). The Ultimate Team Packs on which Plaintiff's allegations focus are not a "service" under this definition; they are software items. As this Court and others have recognized, software is not a service under the CLRA. *See Coffee*, Case No. 20-cv-03901-BLF, at 19–20 ("courts in this district have held that virtual currency is not a good or service for purposes of the CLRA"); *see also In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1070 (N.D. Cal. 2012) ("[T]o the extent Plaintiffs' allegations are based solely on software, Plaintiffs do not have a claim under the CLRA."). Plaintiff argues that EA's User Agreement somehow concedes that its software is a "service." Putting aside the fact that California law, not EA's own purported characterization, controls whether something is considered a service under the CLRA, EA's User Agreement distinguishes between what is at issue here—"software products, such as game software contained on disc or downloaded"—and other "EA Services." Plaintiff's attempt to conflate these two categories is meritless.

### C.  Plaintiff's Unjust Enrichment Claim Fails

Plaintiff concedes that his unjust enrichment claim is predicated on the notion that EA's Ultimate Team Packs are a form of illegal gambling. *See* Opp. 25. As discussed above, the Ultimate Team Packs are not illegal slot machines or devices under the California Penal Code. Accordingly, Plaintiff's unjust enrichment claim should be dismissed.

## III.  CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint without leave to amend.

Dated: February 11, 2021                                   KEKER, VAN NEST & PETERS LLP

By: */s/ R. James Slaughter*
R. JAMES SLAUGHTER
R. ADAM LAURIDSEN
DAVID J. ROSEN
TAYLOR REEVES

Attorneys for Defendant
ELECTRONIC ARTS INC.