# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

|  |  |
|---|---|
| KEVIN RAMIREZ, on His Own Behalf and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRONIC ARTS INC.,<br><br>Defendant. | Case No.  20-cv-05672-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>[Re: ECF 22] |

Plaintiff Kevin Ramirez ("Ramirez" or "Plaintiff") brings this putative class action against Defendant Electronic Arts Inc. ("EA" or "Defendant") alleging that the Ultimate Team Packs feature of EA's video games violates California gambling law. *See* Complaint ("Compl.") ¶ 8, ECF 1. Before this Court is EA's Motion to Compel Arbitration. *See* Mot. to Compel Arbitration ("Mot."), ECF 22. Ramirez filed his Opposition to EA's Motion to Compel Arbitration on January 14, 2021. *See* Opp'n. to Mot. To Compel. ("Opp'n."), ECF 39. EA filed a Reply to Ramirez's Opposition on February 11, 2021. *See* Reply to Opp'n. ("Reply"), ECF 42. The Court heard oral arguments on February 25, 2021. *See* ECF 45.

For the foregoing reasons, the Court GRANTS EA's Motion to Compel Arbitration and STAYS the case pending arbitration.

## I.    BACKGROUND

Defendant EA is in the business of digital interactive entertainment, which includes developing video games for gaming consoles and computers. Declaration of Jijnes Patel ("Patel Decl.") ¶ 2, ECF 23. Each of EA's video games is governed by EA's standard user agreement

United States District Court
Northern District of California

United States District Court
Northern District of California

("User Agreement"). *Id.* ¶ 16. To access the full features of EA's games, including the ability to use Ultimate Team Packs, the user must agree to the terms of the User Agreement. *Id.* ¶ 5. The user is notified of the User Agreement by a pop-up window that appears on the screen when the user first loads the game. *Id.* ¶¶ 7, 11. The pop-up window alerts the user that they must accept the User Agreement before continuing to the game. *Id.* The user is able to scroll through the entire User Agreement, including the arbitration provision in Section 15 ("Arbitration Provision"), before consenting to the User Agreement. *Id.* Users cannot play EA games without first accepting the User Agreement. *Id.* ¶ 12.

Plaintiff Ramirez has owned and played EA's *FIFA* game since 2011 and *Madden NFL* game since 2013. Compl. ¶ 16. In order to play these games, Ramirez must have affirmatively accepted that he read and agreed to be bound by EA's User Agreement. *See* Patel Decl. ¶¶ 5-9, 11-13.

The version of the User Agreement to which Ramirez is bound[1] states:

> [Users'] access and use of software products, such as game software contained on disc or downloaded, offered by EA and its subsidiaries ("EA") and related updates, upgrades and features as well as online and mobile services, features, content and websites offered by EA and/or live events hosted by or in connection with EA (collectively "EA Services")

Patel Decl., Exh. A, Electronic Arts User Agreement 11, ECF 23.

The User Agreement contains an Arbitration Provision, which states in relevant part:

---

[1] In its Motion to Compel Arbitration, EA contends that Ramirez is bound to a prior version of the User Agreement that Ramirez accepted when he first installed *FIFA* and *Madden NFL* in 2011. Mot. 5; Patel Decl. ¶ 16. In its reply brief, however, EA argues that through his continued use of the games, Ramirez is actually bound to the latest version of the User Agreement, which became effective the month after EA's Motion to Compel was filed. Reply 2-3. At oral arguments, Ramirez argued that the Court must rely on the version of the User Agreement referenced in EA's Motion rather than EA's Reply, as EA has not adequately laid foundation for the latter. The Court finds that the relevant updates to the User Agreement do not affect its ruling here, but the 2011 User Agreement will be the version relied upon in considering EA's Motion to Compel, which both parties at a minimum agree Ramirez is bound to.

2

> All disputes, claims or controversies arising out of or relating to this Agreement, any EA Service and its marketing, or the relationship between you and EA ("Disputes") shall be determined exclusively by binding arbitration. This includes claims that accrued before you entered into this Agreement. The only Disputes not covered by this Section are claims (i) regarding the infringement, protection or validity of your, EA's or EA's licensors' trade secrets or copyright, trademark or patent rights; (ii) if you reside in Australia, to enforce a statutory consumer right under Australia consumer law; and (iii) brought in small claims court.

*Id.* 20.

The Arbitration Provision notes in Subsection C that arbitration is governed by the American Arbitration Associates ("AAA") Commercial Rules:

> The arbitration shall be administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules and, where appropriate, the AAA's Supplementary Procedures for Consumer Related Disputes ("AAA Consumer Rules"), both of which are available at the AAA website www.adr.org.

*Id.*

Subsection D of the Arbitration Provision, which includes a class action waiver, provides:

> **YOU AND EA AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.** The arbitrator shall not consolidate another person's claims with your claims and shall not preside over any type of representative or class proceeding. The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. If this specific subsection is found to be unenforceable, then the entirety of this agreement to arbitrate shall be null and void.

*Id.* 20-21 (emphasis in original).

On October 13, 2020, Ramirez filed his Complaint against EA alleging that an online, in-game feature called Ultimate Team Packs, which is present in a number of EA's games, qualifies as an illegal "slot machine or device" under California Penal Code §330(d). *See* Compl. ¶ 8. In the

3

Complaint, Ramirez brings three class action claims: 1) Violation of California's Unfair Competition Law; 2) Violation of California Consumer Legal Remedies Act; and 3) Unjust Enrichment. *Id.* ¶¶ 112-41. As part of his relief, Ramirez requests that EA "modify its games in a manner that prevents its users from engaging in gambling, including through the use of Ultimate Team Packs or similar mechanisms." *Id.* ¶ 124.

EA argues that Ramirez, by installing and playing *FIFA* and *Madden NFL*, accepted and is bound to EA's User Agreement, including the Arbitration Provision with the class action waiver. *See* Mot. 6. Accordingly, EA contends that Ramirez must arbitrate all of his claims against EA on an individual basis. *Id.* Ramirez responds that the Arbitration Provision is unenforceable under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 216 Cal.Rptr.3d 627, 393 P.3d 85 (Cal. 2017) because it bars his ability to seek public injunctive relief. *See* Opp'n. 3. EA responds that pursuant to the AAA rules, gateway issues of arbitrability—such as validity of the agreement—must be decided in arbitration rather than by the Court. *See* Reply 2.

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") embodies a "national policy favoring arbitration and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011) (internal quotations and citations omitted). The FAA provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In deciding whether to compel arbitration, a district court determines two gateway issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement

covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)). "However, these gateway issues can be expressly delegated to the arbitrator where the parties clearly and unmistakably provide otherwise." *Id.* (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 526, 202 L. Ed. 2d 480 (2019). Incorporation of arbitration rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability. *Brennan*, 796 F.3d at 1130; *Cooper v. Adobe Sys. Inc.*, No. 18-CV-06742-BLF, 2019 WL 5102609, at *6 (N.D. Cal. Oct. 11, 2019) (citing *Brennan*, 796 F.3d at 1130).

### III.    DISCUSSION

#### A.    Formation of Arbitration Agreement

The Court must first determine whether the parties agreed to arbitrate. EA has provided sufficient evidence that Ramirez accepted the Arbitration Provision, and that he did so knowingly. The User Agreement "governs [users'] access and use of software products, such as game software contained on disc or downloaded, offered by EA" and includes the Arbitration Provision which covers "[a]ll disputes, claims or controversies arising out of or relating to [the User] Agreement, any EA Service and its marketing, or the relationship between [user] and EA." Electronic Arts User Agreement 11, 20. In order to access all features of the games, such as the Ultimate Team Packs, Ramirez must have affirmatively clicked a button indicating that he accepted the User Agreement, including the Arbitration Provision. *See* Patel Decl. ¶¶ 5-9, 11-13. Ramirez was presented with a warning that "BY USING EA SERVICES, YOU AGREE TO THE ARBITRATION AGREEMENT AND CLASS ACTION WAIVER DESCRIBED IN SECTION

15 TO RESOLVE ANY DISPUTES." *Id.* ¶¶ 7, 11. This statement appeared directly above the User Agreement's acceptance button. *Id.* ¶¶ 7, 11. Ramirez was able to scroll through the entire User Agreement, including the Arbitration Provision, at his leisure prior to accepting. *Id.* Courts have consistently enforced similar "clickwrap" or "browsewrap" agreements where the user had actual notice of the agreement or where the user was required—as Ramirez was—to affirmatively acknowledge the agreement before proceeding with use of the service. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014); *Cooper*, 2019 WL 5102609, at *5. Ramirez does not dispute that he agreed to EA's User Agreement, which includes the Arbitration Provision. *See generally*, Opp'n. Nor does Ramirez challenge that the Arbitration Provision covers Ramirez's action against EA. *Id.* Accordingly, Ramirez's acceptance of EA's User Agreement, and in turn the Arbitration Provision, is sufficient to show that an agreement to arbitrate was formed.

## B. Delegation of Arbitrability

Ramirez argues that the entire Arbitration Provision is unenforceable because it bars his right to obtain public injunctive relief. Opp'n. 3. EA contends that the Arbitration Provision properly incorporates the AAA rules, which provide that disputes regarding the validity of an arbitration agreement are also delegated to the arbitrator, rather than the Court, to decide. Mot. 9. The Court agrees.

The AAA rules provide that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or *validity* of the arbitration agreement or to the arbitrability of any claim or counterclaim." Declaration of Adam Lauridsen, Exh. A., Commercial Arbitration Rules 13, ECF 24 (emphasis added). Courts have established that incorporation of arbitration rules—to include the AAA rules—into a contract constitutes clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability. *See Brennan* 796 F.3d at 1130; *Taylor v. Shutterfly, Inc.*, No. 18-CV-00266-BLF,

2018 WL 4334770, at *6 (N.D. Cal. Sept. 11, 2018) ("[T]he Court notes that the incorporation of AAA rules . . . is further evidence that shows the parties' intent to delegate to the arbitrator."). The Arbitration Provision's incorporation of the AAA rules here constitutes clear and unmistakable delegation of intermediate issues of arbitrability to the arbitrator. Electronic Arts User Agreement 20.

During oral arguments, Ramirez argued that incorporation of the AAA rules without explicit reference to the provision regarding arbitration of arbitrability is insufficient to establish delegation. Ramirez also argued that the fact that one party, himself, was unsophisticated could preclude a finding of delegation. This Court has held before that incorporation of arbitration rules without explicit reference to a specific provision, and where one party was unsophisticated, is sufficient to demonstrate clear and unmistakable evidence that parties agreed to arbitrate arbitrability. *Cooper*, 2019 WL 5102609, at *6. The Court cannot identify, and Ramirez has not otherwise explained, how this situation is meaningfully different from *Cooper*. Accordingly, the Court finds the incorporation of the AAA rules in the EA User Agreement is sufficient to demonstrate delegation of arbitrability to an arbitrator.

### C. Class Action Waiver

Relying on *McGill*, Ramirez argues that the Arbitration Provision is unenforceable in its entirety. Opp'n. 3. In *McGill,* the California Supreme Court held that contracts that waive a party's right to seek public injunctive relief are unenforceable under California law. 2 Cal. 5th at 963. Ramirez contends that Subsection D in the Arbitration Provision, which provides that "the arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim," bars Ramirez from seeking public injunctive relief. Opp'n. 3. Because Subsection D further provides that "[i]f this specific subsection is found to be unenforceable, then the entirety of this

1  agreement to arbitrate shall be null and void," Ramirez argues that accordingly the entire

2  Arbitration Provision is invalidated. *Id.* 6.

3      As discussed above, through the incorporation of the AAA rules the parties delegated issues

4  regarding the validity of the Arbitration Provision to the arbitrator. The issue presented here—

5  whether the Arbitration Provision is unenforceable because it improperly limits the right to seek

6  public injunctive relief—is clearly a matter regarding the validity of the Arbitration Provision. As

7  such the Court finds that it is plainly delegated to an arbitrator, rather than this Court, to decide.

8  *See Cooper*, 2019 WL 5102609, at *6 (holding that where parties agreed to arbitrate arbitrability,

9  whether an arbitration provision is unenforceable under *McGill* is an issue of validity for the

10  arbitrator to decide).

11      **D. Dismissal of Plaintiff's Claims**

12      EA requests that the Court dismiss Ramirez's claims upon a finding that they are arbitrable.

13  Mot. 11. In the Ninth Circuit, courts have discretion to stay or dismiss claims subject to a valid

14  arbitration agreement. *Price v. Petaluma Health Ctr.*, No. 17-CV-05428-HSG, 2019 WL 402314,

15  at *2 (N.D. Cal. Jan. 31, 2019) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th

16  Cir. 1988)). However, the court should exercise this discretion after "the court determines that all

17  of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's,*

18  *Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014).

19      Although the parties do not contest that Ramirez's claims are covered by the Arbitration

20  Provision, the arbitrator must still determine as an initial matter whether the Arbitration Provision

21  is enforceable against Ramirez's claims. Because it is not certain that Ramirez's claims will

22  remain in arbitration, outright dismissal is not appropriate, and the Court stays this action pending

23  the completion of arbitration.

24      **IV. CONCLUSION**

8

For the foregoing reasons, the Court GRANTS EA's Motion to Compel Arbitration and STAYS the case pending the outcome of the arbitration. The Parties must provide this Court with their status on the initiation of arbitration within 60 days of this Order, and thereafter within 10 days of the conclusion of arbitration. Accordingly, the Court TERMINATES EA's Motion to Dismiss at ECF 26. If the case is returned to this Court, EA may re-notice its Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: March 5, 2021

BETH LABSON FREEMAN
United States District Judge